CHARLES CLARK, Circuit Judge:
 

 Borg-Warner Acceptance Corporation [Borg-Warner] appeals from the decision of the district court that its security interest in the inventory of Shady Grove TV & Appliance was inferior to that claimed by Fedders Financial Corporation [Fedders]. While acknowledging that it did not file a financing statement perfecting its security interest prior to the filing made by Fedders, Borg-Warner contends that its perfected security interest should take priority over the security interest asserted by Fedders on the grounds that Fedders did not make the local filing required under Mississippi law in the correct county, that the financing statement filed by Fedders stated the debtor’s name incorrectly and was therefore seriously misleading, and that Fedders failed to file a new financing statement to reflect a change in the name of the debtor. We reverse.
 

 I. Facts
 

 During 1974 Rex L. Hammons and Donald R. Ball, as partners, conducted a business in Raleigh, Smith County, Mississippi, under the trade name “Hammons’ Heating and Air Conditioning” [Hammons’ Heating]. Hammons actually operated the business, while Ball, who was an employee of a hardware store, characterized his involvement with it as being that of a “silent partner.” Hammons’ Heating primarily sold, installed, repaired, and serviced heating and air conditioning units and systems.
 

 To finance the purchase of new inventory, Hammons and Ball on October 3, 1974, executed a security agreement with Fed-ders granting it a security interest in the partnership’s presently owned and after-acquired inventory. On October 14, 1974, Fedders filed a financing statement with the Mississippi Secretary of State, listing the debtor as:
 

 Hammons’ Heating and Air Conditioning (a partnership)
 

 Rex L. Hammons and Don R. Ball (partners)
 

 Route 2
 

 Raleigh, Mississippi
 

 Only Ball signed the financing statement but the partners’ individual names and the partnership’s trade name were typed above the space designated for the debtor’s signature. Seeking to comply with Mississippi’s local filing requirement, Fedders filed an identical financing statement with the Chancery Clerk of Smith County on October 22, 1974.
 

 In December, 1974, Hammons and Ball closed their place of business in Raleigh, Smith County, and relocated it in Laurel, Jones County, Mississippi. At the same time they changed their trade name to “Shady Grove TV and Appliance” [Shady Grove]. Both Hammons and Ball actively participated in the operation of the Jones County business. In addition to the types of merchandise previously sold by Ham-mons’ Heating, Shady Grove sold televisions, radios, citizens band radios, refrigerators, freezers, and other electrical appliances.
 

 On December 3, 1974, Hammons and Ball executed a security agreement with Borg-Warner granting it a security interest in all of the partnership’s present and after-acquired inventory. In response to a request by Borg-Warner for information about any prior filings listed under “Ball, Donald R., and
 
 Hammonds,
 
 Rex L., individually and as copartners DBA Shady Grove TV and Appliance Center” (emphasis supplied), the Mississippi Secretary of State certified that no prior financing statements had been recorded for those debtors. Borg-Warner then filed a financing statement with the Secretary of State on December 9, 1974, listing the debtor as “Ball, Donald R., and
 
 Hammonds,
 
 Rex L., individually and as co-partners DBA Shady Grove TV and Appliance Center” (emphasis supplied). Borg-Warner also filed an identical financing statement with the Chancery Court of Jones County on December 10, 1974.
 

 
 *402
 
 Fedders did not deliver to the partnership any of the merchandise financed under its October 14, 1974, security agreement until December 19, 1974, and this merchandise was delivered to the Shady Grove place of business in Jones County. At that time, Fedders, of course, had actual knowledge of the relocation of the partnership’s place of business to Jones County and its adoption of a new trade name.
 

 Hammons and Ball, individually and as a partnership, filed a voluntary bankruptcy petition on July 19, 1976. At that time the value of the partnership’s inventory did not exceed $50,000 and would not suffice to satisfy the claims of either Fedders or Borg-Warner.
 

 In an adversary proceeding initiated by Borg-Warner, the bankruptcy judge determined that Shady Grove was a new, distinct business from Hammons’ Heating, and he ruled that Fedders’ security interest in the partnership’s inventory was unperfected, since its financing statement listed an incorrect name for the debtor and had not been filed in the correct county in Mississippi. Fedders appealed this decision to the district court, which reversed as clearly erroneous the bankruptcy court’s determination that Shady Grove was a new business. It held that Fedders’ security interest remained perfected under its Smith County filing even though the location and trade name of the partnership’s business had changed.
 

 On this appeal Borg-Warner contends that the bankruptcy court’s finding that Shady Grove was a new business distinct from Hammons’ Heating was not clearly erroneous, that Fedders’ financing statement was seriously misleading since it listed Hammons’ Heating as the debtor, that Fed-ders was under a duty to file an amended financing statement when it learned of the change in the partnership’s trade name, and that Fedders did not make its local filing in the proper county. In response, Fedders asserts that it perfected its security interest by filing its October 14, 1974, financing statement in the name of the debtor and in the local county in which the debtor had its only place of business at that time. It maintains that the Uniform Commercial Code did not obligate it to refile or amend its original filing to reflect the change in the partnership’s trade name and the location of its business.
 

 II. Two Businesses or One?
 

 The first issue raised by this appeal is the correctness of the district court’s ruling that Shady Grove was not a new or legally distinct business entity but was merely a continuation of Hammons’ Heating, the original business operated by the partnership of Hammons and Ball. The bankruptcy judge, relying primarily upon four factors: (1) the relocation of the business in a different county, (2) the partnership’s adoption of a new trade name under which the partnership operated, (3) the alteration of Ball’s status from a silent to an active partner, and (4) the expansion of the business to include new lines of merchandise, concluded that Shady Grove constituted a legally distinct business from Hammons’ Heating. The district court, however, ruled that the bankruptcy judge’s determination that Shady Grove was a new, distinct business from Hammons’ Heating was clearly erroneous. Noting that the partners had not altered their legal relationship in effectuating the relocation of their business, the district court found Ball’s active participation in Shady Grove was without significance, since as a “silent partner,” he had had the same right to participate in the management and operation of Hammons’ Heating as Hammons. It rejected the contention that the addition of new types of merchandise to Shady Grove’s inventory caused it to be a distinct entity from Ham-mons’ Heating, citing the testimony of the partners that after relocation their business was essentially the same and they continued to offer the lines of merchandise that they had sold in Raleigh.
 

 The district court is bound to accept the bankruptcy judge’s factual findings unless clearly erroneous. The bankruptcy judge is the trier of fact who sees and hears the witnesses, makes credibility determinations, and resolves conflicts in the
 
 *403
 
 proof. The district court, however, must independently determine the correctness of the ultimate legal conclusion adopted by the bankruptcy judge on the basis of the facts found. The district court treated the determination that Shady Grove was a legally distinct business from Hammons’ Heating as a factual finding that could be reversed only if it was clearly erroneous. We do not agree that this test was proper. The strictures of the clearly erroneous rule did not bind the district court here. The bankruptcy judge’s “new and different business” determination was a conclusion as to the legal significance of evidentiary facts. As such, it was subject to review free of the clearly erroneous rule.
 
 See Parson v. Kaiser Aluminum & Chemical Corp.,
 
 575 F.2d 1374, 1382-83 (5th Cir. 1978)
 
 cert. denied,
 
 441 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979);
 
 Stepp v. Estelle,
 
 524 F.2d 447, 452-53 (5th Cir. 1975);
 
 Causey v. Ford Motor Co.,
 
 516 F.2d 416, 420-21 (5th Cir. 1975);
 
 Galena Oaks Corp.
 
 v.
 
 Scofield,
 
 218 F.2d 217, 219 (5th Cir. 1954). The district court was bound by the bankruptcy court’s findings of fact concerning the nature of Ball’s involvement with Hammons’ Heating and Shady Grove and the differences between the lines of merchandise sold by the partnership at its two locations. However, it had the duty to examine these evidentiary facts and determine their legal significance in light of all other facts found or established by the record. The district court did not set aside any underlying factual findings made by the bankruptcy judge; it only refused to reach the legal conclusion that those and other facts meant that the partnership’s business in Jones County was legally distinct from Hammons’ Heating, which it had formerly conducted in Smith County.
 

 The district court’s conclusion that Shady Grove was not a legally distinct entity from Hammons’ Heating was correct. While the two partners operated Shady Grove under a different trade name and in a different location from Hammons’ Heating, they did not alter their legal relationship when they relocated their business. They continued the business they had been operating in Smith County. They offered the same services and merchandise at Shady Grove as they had offered at Ham-mons’ Heating even though they added to their stock-in-trade several types of electrical appliances. Although we disagree with the reasoning process used, we agree with the district court’s conclusion that Shady Grove was not so new and different that it legally amounted to a separate business enterprise.
 

 III. The Validity of Fedders’ Filing in Smith County
 

 Having determined that Shady Grove was not a new business entity distinct from Hammons’ Heating, we must now decide whether the financing statement filed by Fedders in Smith County sufficed to perfect its interest in the after-acquired inventory of Shady Grove in Jones County. Borg-Warner contends that Fedders’ security interest was unperfected because it failed to make its local filing in the proper county and to file an amended financing statement reflecting the debtor’s change in name.
 
 [1]
 
 In response, Fedders contends that it perfected its security interest by filing a financing statement in the county in which the debtor had its business at the time of filing and that it was under no obligation to file a new financing statement when it learned of the change in debtor’s name and location.
 

 Miss.Code Ann. § 75-9-401 (1972) requires a creditor seeking to perfect a security interest in the inventory of a debtor to file a financing statement “in the office of the secretary of state, and in addition, if the debtor has a place of business in only one (1) county of this state, also in the office of the chancery clerk of such county.”
 
 [2]
 
 Nei
 
 *404
 
 ther section 75-9-401 nor the decisions of the Mississippi courts, however, establish at what time in the course of his dealings with a single-place-of-business debtor the creditor must determine the proper county in which to make his local filing. Those courts in other jurisdictions that have addressed the issue have reached divergent results. Some courts have held that the facts existing at the time the security interest attaches should control the place of filing,
 
 see In re Knapp,
 
 575 F.2d 341 (2d Cir. 1978);
 
 In re Pelletier,
 
 5 U.C.C.Rep. 327 (D.C.Me., ref., 1968); while others have ruled that the time of filing controls,
 
 see Schoel v. Oak Cliff Savings and Loan Ass’n,
 
 21 U.C.C.Rep. 325 (N.D.Ala., B.J., 1977);
 
 In re Page,
 
 6 U.C.C.Rep. 250 (W.D.Ky.1968). The official comments to the 1972 text of the Uniform Commercial Code, however, suggest a third alternative by indicating that the secured party should determine whether a local filing is necessary on the basis of the facts existing at the time of the occurrence of the last event for perfection. Comment 4, U.C.C. § 9-401 (1972).
 

 Those courts and commentators that have advocated the time of filing rule have focused primarily upon the purposes underlying the code provisions granting priority to secured creditors on the basis of the time of filing, U.C.C. § 9-312(5)(a), and continuing the effectiveness of a filing initially made in the proper place following a change in the factors that governed the place of filing, U.C.C. § 9-401(3).
 
 See In re Page,
 
 6 U.C.C.Rep. 250 (W.D.Ky.1968); J. White & R. Summers, Uniform Commercial Code, § 23-14 at 828 (1972). By granting priority to the first secured party to file, the code allows a creditor to examine the records, file a financing statement, and establish his priority from that date regardless of when the security interest attaches or becomes perfected and of any changes in the conditions which dictated where the original filing should be made.
 
 Id.
 
 Once a secured party has made a proper filing and has perfected his security interest, any subsequent advances he makes to the debtor will automatically be protected by his perfected security interest without having to check for filings later than his. Comment 4, U.C.C. § 9-312. On the basis of these provisions, Professors White and Summers contend that the debtor’s status at the time of filing should determine where the filing must be made.
 

 Those courts that have held that the secured party must decide where the financing statement should be filed on the basis of the facts existing at the time the security interest attached have relied upon the purposes of the simplified filing procedures established by Article 9 and upon inferences drawn from other sections of Article 9. In
 
 In re Knapp,
 
 575 F.2d 341 (2d Cir. 1978), the Second Circuit noted that one of the primary purposes of U.C.C. § 9-401 was to enable a creditor to determine more readily the proper place to file his financing statement and that the drafters designed the code to avoid imposing a duty upon the secured party to maintain a continuing surveillance of the debtor.
 
 See also In re O’Donnell,
 
 7 U.C.C.Rep. 888 (D.C.Me., ref., 1970). Two courts have concluded that the time at which the security interest attached was a logical time to determine the place of filing on the grounds that the time of attachment is often the final occasion of direct contact between the debtor and the secured party and that secured parties generally check the debtor’s credit and verify other important facts such as the debtor’s residence at that time.
 
 In re Knapp,
 
 575 F.2d at 344;
 
 In re Pelletier,
 
 5 U.C.C.Rep. at 332. The bankruptcy referee in
 
 In re Pelle-tier
 
 asserted that selection of the place of filing on the basis of the facts existing at the time the security interest attached would facilitate searches of the record by later creditors by narrowing the expanse of time within which the debtor’s prior history must be ascertained to the usually brief interval in which the prerequisites to attachment of the security interest could be deemed to have taken place.
 
 Id.
 
 at 334. He noted that the purpose of notice filing was not to notify the world of the debtor’s place of residence at the time of filing, but
 
 *405
 
 to inform it of the existence of a security interest in collateral that arose while the debtor resided in the place where the filing was made.
 
 Id.
 
 at 335. Since the secured party must decide whether a filing is necessary to perfect his interest on the basis of the nature of the collateral at the time of attachment,
 
 [3]
 
 some courts have concluded that it is both consistent and reasonably convenient to require that the facts which determine the place of filing be ascertained at the same time.
 
 See id.
 
 at 335-36;
 
 In re Kane, 1
 
 U.C.C.Rep. 582 (E.D.Pa., ref., 1962).
 

 While both the time of filing rule and the time of attachment rule have merit, neither rule furthers the important policy of providing notice to subsequent creditors of the prior existing security interest as well as a rule based upon the last event test. By requiring that the determination of the proper place to file be made at the time when the last event occurs upon which the perfection of the creditor’s security interest is based, the last event rule ensures that the place in which the filing is made and the contents of the filing will reflect any changes made by the debtor between the time of attachment and the time of filing, regardless of which came first. The filing would be more likely to reflect the location and status of the debtor which exists at the time a subsequent creditor is searching the records to determine what prior security interests have been perfected against the debtor and therefore will be more likely to be found by such a subsequent creditor.
 
 [4]
 
 For this reason we conclude that the secured party must determine the correct place in which to file his financing statement on the basis of the facts existing at the time when the last event necessary for the perfection of his security interest occurs.
 

 In this case, Fedders’ security interest did not become perfected until it gave value to the partnership and the partnership had rights in the collateral. Miss.Code Ann. § 75-9-204 (1972) (amended Supp. 1979). Neither event occurred until Fedders delivered some of the merchandise financed under the security agreement to the partnership, and the first such delivery was made after the partnership had relocated its sole place of business in Jones County. Therefore, Fedders’ failure to file a financing statement in Jones County causes its security interest to be unperfected.
 
 [5]
 

 IV. Is Borg-Warner’s Filing Seriously Misleading?
 

 Our conclusion that Fedders failed to perfect its security interest necessitates that we determine the adequacy of Borg-Warner’s filing in Jones County. While it made its local filing in the proper county, its financing statement listed the debtor as:
 

 Ball, Donald R. &
 
 Hammonds,
 

 
 *406
 
 Rex L., individually and as co-partners DBA
 

 Shady Grove TV & Appliance Center (emphasis supplied).
 

 Borg-Warner misspelled Hammons’ name and added the word “Center” to the partnership’s trade name.
 

 Under Miss.Code Ann. § 75-9-402(5) a financing statement that lists the debtor’s name incorrectly will still be effective if the error does not cause it to be seriously misleading. In the absence of any decisions by the Mississippi courts delineating what sort of errors should be considered to be seriously misleading, we must turn to decisions by courts in other jurisdictions for guidance. While some courts have held that the alteration of a single letter in a debtor’s name sufficed to make a financing statement misleading,
 
 see Bank of North America v. Bank of Nutley,
 
 94 N.J.Super. 220, 227 A.2d 535 (1967);
 
 John Deere Co. v. William C. Pahl Construction Co.,
 
 34 App.Div.2d 85, 310 N.Y.S.2d 945 (1970); where individuals operate a business under a trade name, courts have concluded that a financing statement which shows the name of the individual or individuals legally responsible for the debt is adequate.
 
 Citizens Bank v. Ansley,
 
 467 F.Supp. 51 (M.D.Ga.),
 
 aff’d,
 
 604 F.2d 669 (5th Cir. 1979);
 
 In re Fowler,
 
 407 F.Supp. 799, 803 (W.D.Okl.1975);
 
 National Cash Register Co. v. Firestone & Co.,
 
 346 Mass. 255, 191 N.E.2d 471 (1963).
 

 The security agreements executed by Fedders and Borg-Warner both characterize the debtor as the partnership comprised of Hammons and Ball. Borg-Warner’s financing statement correctly lists Ball’s name, and we conclude that the misspelling of Hammons’ name and the erroneous listing of the partnership’s trade name did not cause the financing statement to be seriously misleading. None of the evidence presented to the bankruptcy court indicated that any creditor who dealt with the partnership was unaware of Ball’s status as a partner. By correctly listing Ball’s name and indicating that the debtor was a partnership, Borg-Warner’s financing statement sufficed to put subsequent creditors on notice of the need for further inquiry concerning the possible existence of a prior security interest in the partnership’s inventory. Thus Borg-Warner has a perfected security interest in the debtor’s inventory.
 

 REVERSED.
 

 [1]
 

 . Due to our conclusion that Fedders did not make its local filing in the proper county, we do not address the other grounds on which Borg-Warner asserts that Fedders did not properly perfect its security interest.
 

 [2]
 

 . Neither party contends, nor does the testimony presented to the bankruptcy judge indicate, that the debtor partnership had places of business in two counties at any time. While Ball’s testimony suggests that the partnership conducted business in both counties, it never had a place of business in more than one county.
 

 [3]
 

 . Under U.C.C. § 9-105(l)(f)> characterization of the type of collateral should be made at the time the security interest attaches. Under the original language of U.C.C. § 9-401(l)(b), when the collateral consisted of goods “which at the time the security interest attaches” are or are to become fixtures, the secured party must file his financing statement in the office where mortgages on real estate would be filed.
 

 [4]
 

 . Under Miss.Code Ann. § 75-9-403 (Supp. 1979), a financing statement which does not state a maturity date continues to be effective for five years and may be renewed by the creditor for an indefinite number of successive five-year periods. Miss.Code Ann. § 95-9-401(3) (Supp. 1979) provides that changes in the debtor’s residence or place of business or in the location of the collateral or its use do not affect the validity of a properly filed financing statement. These provisions enable a creditor who perfects his security interest by filing to rely upon the information contained in his original filing to maintain his perfection for an extensive period of time. The current version of the Mississippi U.C.C. requires a creditor to file a new financing statement only where its debtor changes its name to such an extent that a filed financing statement becomes seriously misleading. Miss.Code Ann. § 75-9-402(7) (Supp. 1979).
 

 [5]
 

 .This case does not present the issue of which creditor would have priority if Fedders had filed a new financing statement in Jones County at the time its security interest attached, but subsequent to the filing made by Borg-Warner.