**In re Earl Jack HARTLEY, Sr., Louise Paulette Hartley, Debtors.**

**Robert H. ALLEN, Trustee, Plaintiff,**

**v.**

**JIM WALTER HOMES, INC. and Mid State Homes, Inc., Defendants.**

Bankruptcy No. 84–01016.

Adv. No. 85–0243.

Civ. A. No. 87–0092–BH–C.

United States District Court,
S.D. Alabama, S.D.

June 7, 1987.

Robert H. Allen, Mobile, Ala., for plaintiff.

Sandy J. Crisham, Mobile, Ala., for defendants.

## ORDER

HAND, Chief Judge.

This cause is before the Court on appeal of Jim Walter Homes, Inc., as a secured creditor, from the decision of the Bankruptcy Court entered on December 30, 1986. Jim Walter Homes, Inc. specifically challenges: (1) the applicability of the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362, in this case; (2) the Bankruptcy Court's finding that Jim Walter Homes, Inc. willfully violated the stay in this cause by accepting from the debtors a deed in lieu of foreclosure; and (3) the Bankruptcy Court's award of actual and punitive damages and attorney's fees.

Debtors, Earl Jack Hartley, Sr. and Louise Paulette Hartley, filed a debtor proceeding under Chapter 13 of the Bankruptcy Code on October 24, 1984. In their petition, the debtors listed a debt to Jim Walter Homes, Inc. which was secured by their home place. Debtors indicated an intent and desire to retain their homestead and to claim it as exempt to the extent allowed by law. The debtors' Chapter 13 plan was confirmed on March 13, 1985.

Subsequent to the confirmation and during the pendency of the Chapter 13 case, the debtors failed to make their mortgage payments as required by the promissory note and mortgage held by Jim Walter Homes, Inc. On June 22, 1985, the debtors executed a deed, in lieu of foreclosure, to Jim Walter Homes, Inc. in full satisfaction of the debt. Jim Walter Homes, Inc. there-

after on July 12, 1985 sold the property to Mrs. Hartley's mother and sister for $34,500.00.

On July 23, 1985, the debtors converted their Chapter 13 case to one under Chapter 7. Jim Walter Homes, Inc. was not listed as a creditor in the original Chapter 7 petition nor did the debtors claim to own any real property. Robert H. Allen was appointed Trustee in the Chapter 7 case and, on November 12, 1985, Mr. Allen was authorized to act as his own attorney. On October 22, 1985, Mr. Allen filed the instant adversary proceeding against Jim Walter Homes, Inc. and Mid-State Homes, Inc. for violation of the automatic stay during the pendency of the Chapter 13 case. Thereafter, on November 13, 1985, the debtors filed an amended schedule of affairs listing Jim Walter Homes, Inc. as a creditor holding security and listing their "home place" as real property owned by the debtors.

On August 20, 1986, the Trustee's complaint was tried by the Bankruptcy Court.[1] On December 30, 1986, the Bankruptcy Court entered an order dismissing the Trustee's complaint against Mid-State Homes, Inc., but finding that Jim Walter Homes, Inc. "deliberately and intentionally took the debtors' property regardless of the debtors' bankruptcy case." The Bankruptcy Court awarded the Trustee actual damages of $3,063.71, punitive damages of $2,000.00 and attorney's fees of $2,500.00 against Jim Walter Homes, Inc. On January 9, 1987, Jim Walter Homes, Inc. timely filed a notice of appeal of the Bankruptcy Court's December 30, 1986 order.

Jim Walter Homes, Inc. raises five issues on appeal: (1) whether the automatic stay provision of 11 U.S.C. § 362 is applicable in this case; (2) whether, assuming the automatic stay is applicable, Jim Walter Homes, Inc. willfully violated the stay by requesting and accepting from the debtors a deed in lieu of foreclosure; (3) whether the evidence of record supports an award of $3,063.71 as actual damages; (4) whether punitive damages in the amount of $2,000.00 were properly awarded in this case; and (5) whether an award of $2,500.00 as an attorney's fee to the Trustee, who was authorized to act as his own attorney, is supported by the evidence of record.

It is clear that this Court must affirm the findings of the Bankruptcy Court unless they are clearly erroneous. *Birmingham Trust National Bank v. Case*, 755 F.2d 1474, 1476 (11th Cir.1985); Bankruptcy Rule 8013. The test to be applied to factual findings "is not whether a different conclusion from the evidence would be appropriate, but whether there is sufficient evidence in the record to prevent clear error in the trial judge's findings." *In re Garfinkle*, 672 F.2d 1340, 1344 (11th Cir.1982). Issues of law and the Bankruptcy Court's determination of the legal significance that attaches to its factual findings, however, are to be reviewed *de novo*. *See, e.g., Richmond Leasing Co. v. Capital Bank*, 762 F.2d 1303 (5th Cir.1985); *In re Hammons*, 614 F.2d 399 (5th Cir.1980). Indeed, it is this Court's duty to "independently determine the correctness of the ultimate legal conclusion adopted by the bankruptcy judge." *Hammons*, 614 F.2d at 403.

Based upon the Court's careful consideration of the parties' respective arguments and the record as a whole, the Court concludes that the December 30, 1986 order of the Bankruptcy Court is due to be affirmed in part and reversed in part as set forth below:

### A. *Applicability of the Automatic Stay*

Appellant-creditor's contention that the automatic stay provision of 11 U.S.C. § 362 is inapplicable in this case is predicated upon four alternative, though to some extent interrelated, theories.[2] Jim Walter Homes, Inc. first argues, in essence, that,

---

1. A judgment by default entered against Jim Walter Homes, Inc. and Mid-State Homes, Inc. on April 1, 1986 was subsequently set aside and the matters set down for a new trial on August 20, 1986.

2. The record does not support appellee's contention that this issue was not raised in the first instance to the trial court and that appellant, therefore, is barred from raising it here.

pursuant to 11 U.S.C. § 1327(b) and (c),[3] all property of the bankruptcy estate vested in the debtors free and clear of any claim or interest of any creditor upon confirmation of the debtors' Chapter 13 plan. Therefore, appellant theorizes, the automatic stay which was triggered solely by the filing of debtors' Chapter 13 petition ceased to exist because the property, upon confirmation of the Chapter 13 plan, was no longer property of the estate as required by 11 U.S.C. § 362(c)(1).

■ The Court agrees that under 11 U.S.C. § 362(c)(1): "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate." However, to accept appellant's theory that the confirmation of a Chapter 13 plan results without further court order in the lifting of the automatic stay would require this Court to ignore the significance of paragraph (2) of § 362(c), particularly as it relates to paragraph (1) and other provisions of the code, i.e., § 362(a). The Court would also be required to ignore the legislative history relative to § 362(c). Paragraph (2) of § 362(c) provides:

> [T]he stay of any other act under [§ 362(a)] continues until the earliest of—
>
> (A) the time the case is closed;
>
> (B) the time the case is dismissed; or
>
> (C) if the case is a case under Chapter 7 of this title [11 U.S.C. §§ 701 et seq.] concerning an individual or a case under Chapter 9, 11 or 13 of this title [11 U.S.C. §§ 901 et seq., 1101 et seq., 1301 et seq.], the time a discharge is granted or denied.

Congress described the purpose of § 362(c) and the interrelationship of paragraphs (1) and (2) contained therein as follows:

Subsection (c) of section 362 specifies the duration of the automatic stay. Paragraph (1) terminates a stay of an act against property of the estate, such as by sale, abandonment, or exemption. *It does not terminate the stay against property of the debtor if the property leaves the estate and goes to the debtor.* Paragraph (2) terminates the stay of any other act on the earliest of the time the case is closed, the time the case is dismissed, or the time a discharge is granted or denied (unless the debtor is a corporation or partnership in a Chapter 7 case).

S.Rep. No. 989, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5838 and H.R.Rep. No. 598, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6299 (emphasis added). It is apparent, therefore, that the reason § 362(c)(1) does not terminate the stay against property revested in the debtor pursuant to § 1327(b) is that property in the hands of the debtor is independently protected by the provisions of § 362(a)(5),[4] which automatically stays a wide variety of actions against "the debtor's property," including judicial or private foreclosures. See, 2 Collier on Bankruptcy ¶ 362.07 at 362–34 (15th ed); *Guild Mortgage Co. v. Cornist,* 7 B.R. 118, 120 (Bankr.S.D.Calif.1980). *See also, In re Hahn,* 60 B.R. 69, 76 (Bankr.D.Minn.1985); *In re Loughnane,* 28 B.R. 940, 941–42 (Bankr.D.Colo.1983); *Green v. National Cash Register Co. CI Corp. System,* 15 B.R. 75, 77 (Bankr.S.D.Ohio 1981); *In re Motley,* 10 B.R. 141, 145 (Bankr.M.D.Ga. 1981). As applied to the case at bar, it is apparent that despite the vesting of the property of the estate in the debtors upon confirmation of the Chapter 13 plan, the

---

**3.** Section 1327 of Title 11 of the United States Code provides, in pertinent part:

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or

interest of any creditor provided for by the plan.

**4.** As applied in this case, 11 U.S.C. § 362(a) provides that the filing of debtors' Chapter 13 petition operated as a stay of:

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title [11 U.S.C. §§ 101 et seq.];

automatic stay provisions of 11 U.S.C. § 362 relative to actions against the debtors' property remained in full force and effect.[5]

 Jim Walter Homes, Inc. next theorizes that in the Chapter 7 case the Bankruptcy Court possessed no jurisdiction over the mortgaged property in question because, prior to conversion of the Chapter 13 case to a Chapter 7 case, the property ceased to be part of the bankruptcy estate. This theory is, at the very least, dependent upon the merit of appellant's first theory. Here, appellant surmises in substance that, pursuant to the lifting of the automatic stay under appellant's first theory discussed above, debtors were free to convey their interest in the property, characterized as only an equity of redemption,[6] to the appellant and that, by such conveyance prior to conversion, the property in its entirety[7] was no longer available to the estate under 11 U.S.C. § 541 when the case was converted to one under Chapter 7. It seems abundantly clear that a creditor cannot rely upon a conveyance made prior to dismissal of or discharge in the Chapter 13 case, and therefore made in violation of the automatic stay provisions of 11 U.S.C. § 362(a)(5) and (c)(2), to assert the unavailability of the conveyed property at the time the case is converted to one under Chapter 7.[8] Provisions of the Bankruptcy Code permitting conversion of a Chapter 13 case to one under Chapter 7, i.e., 11 U.S.C. § 1307, were not intended to absolve creditors of liability for violations of the automatic stay during the pendency of the Chapter 13 case.

 Jim Walter Homes, Inc.'s third theory by which it asserts the inapplicability of the automatic stay is premised upon the contention that once property is claimed as exempt by the debtors, in this instance pursuant to Ala.Code § 6–10–2 (1975),[9] it is no longer property of the estate and, therefore, no longer subject to 11 U.S.C. § 362. As stated previously, the mere fact that exempt property is no longer property of the estate for purposes of 11 U.S.C. § 362(c)(1) does not remove such property from the protection afforded debtors under 11 U.S.C. § 362(a)(5) and (c)(2). *See, e.g., In re Hahn,* 60 B.R. 69 (Bankr.D.Minn. 1985). Exempt property, as the appellant itself recognizes, merely leaves the estate and vests in the debtor. Even if it were true that debtors were free to do whatever they wished to do with the exempt property,[10] appellant was nonetheless prohibited

---

5. Appellant's reliance on *In re Balogun,* 56 B.R. 117 (Bankr.M.D.Ala.1985), is misguided. *Balogun* involved a confirmation of a Chapter 11 reorganization plan which, in contrast to a Chapter 13 confirmation, does effectuate a discharge contemplated by 11 U.S.C. § 362(c)(2). Compare 11 U.S.C. § 1141 and 11 U.S.C. §§ 1327 and 1328.

6. In conjunction with this theory, appellant asserts that the debtors never possessed a legal interest in the property because Alabama is a title state in which a mortgagor conveys his legal title to the mortgagee when he executes a mortgage, thus leaving debtors with nothing more than an equity of redemption. For purposes of the case at bar, the Court need only point out that a right of redemption, whether it be an equitable right of redemption before foreclosure or a statutory right of redemption after foreclosure, clearly constitutes a property interest of the debtor which is subject to the Bankruptcy Court's jurisdiction. *Wragg v. Federal Land Bank of New Orleans,* 317 U.S. 325, 63 S.Ct. 273, 87 L.Ed. 300 (1943). Consequently, the distinction appellant attempts to make between debtors' legal and equitable interests in this case does not, as discussed above, eradicate

the applicability of the automatic stay provision of 11 U.S.C. § 362.

7. Appellant asserts in essence that upon conveyance by the debtors of their equity of redemption, appellant became the sole owner of and possessed all equitable and legal interests in the property.

8. It is clear that, under appellant's theory, 11 U.S.C. § 362(h) would be rendered inapplicable to any case converted from Chapter 13 to Chapter 7. Congress did not so limit the applicability of § 362(h).

9. Pursuant to the opt out provisions of 11 U.S.C. § 522(b)(1), Alabama enacted legislation which prohibited its citizens from electing the federal homestead exemption contained in § 522(d). *See,* Ala.Code § 6–10–11 (Supp.1986).

10. It would appear that purusant to 11 U.S.C. § 1303, the Chapter 13 debtor has the same rights and powers as a Trustee under 11 U.S.C. § 362(b). Debtor, therefore, can only use, sell or lease property "after notice and a hearing," which seems to imply a necessity for obtaining the Bankruptcy Court's permission.

under 11 U.S.C. § 362(a)(5) from taking any action to enforce its lien against the debtors' property, including a request, under threat of foreclosure, that debtors convey the property without first seeking relief from the stay pursuant to 11 U.S.C. § 362(d). The purpose for the imposition of such a prohibition is fundamental:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It *stops all collection efforts, all harassment, and all foreclosure actions.* It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

S.Rep. No. 989, *supra,* and H.R.Rep. No. 598, *supra, reprinted in* 1978 U.S.Code Cong. & Ad.News at 5840–41 and 6296–97.[11] There is no question that the purpose of the automatic stay would be thwarted if creditors were permitted without leave of court to "encourage" debtors in bankruptcy to convey their property in lieu of foreclosure.

█ Jim Walter Homes, Inc. finally contends that the automatic stay is not applicable to residential real property where there is a post-petition default. Appellant specifically asserts that to require a creditor to resort to the Bankruptcy Court for relief from stay upon the post-petition default of the debtor is to modify the rights of the creditor, i.e., the right to immediate foreclosure, in contravention of 11 U.S.C. § 1322(b)(2). It is true that § 1322(b)(2) provides that the debtor's reorganization plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principle residence,* or of holders of unsecured claims." 11 U.S.C. § 1322(b)(2) (emphasis added). It is also true that, notwithstand-

ing § 1322(b)(2), the plan may provide for the curing of any prepetition default within a reasonable time and for maintenance of payments while the Chapter 13 case is pending. 11 U.S.C. § 1322(b)(5). The Court disagrees, however, with appellant's contention that the continuation of the automatic stay and the consequent need to approach the Bankruptcy Court for relief in the context of post-petition default results in a prohibited modification of appellant's rights. As Congress made clear:

> The stay is finely tuned. It is not overbroad, and is directed at only the problems that have arisen under present law. It does not affect the creditor's substantive rights in any way. It operates only as a procedural delay. The creditor remains entitled to full satisfaction.

H.R.Rep. No. 598, *supra, reprinted in* 1978 U.S.Code Cong. & Ad.News at 6084. *Compare, United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) in which the Supreme Court held:

> As does all bankruptcy law, § 542(a) modifies the procedural rights available to creditors to protect and satisfy their liens.[14] [[14] One of the procedural rights the law of secured transactions grants a secured creditor to enforce its lien is the right to take possession of the secured property upon the debtor's default....]. In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor at the commencement of reorganization proceedings. [Footnote omitted]. The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession.

462 U.S. at 206–07, 103 S.Ct. at 2314–15. (Citations omitted; Footnote 14 inserted in pertinent part). It is also apparent that appellant's right under 11 U.S.C. § 1307(c),

---

11. *See, also,* H.R.Rep. No. 598, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6086–87:

> The stay is the first part of bankruptcy relief, for it gives the debtor a respite from the forces that led him to bankruptcy. Frequently, a consumer debtor is severely harassed by his creditors when he falls behind in payments on loans. The harassment takes the form of abusive phone calls at all hours, including at work, threats of court action, attacks on the debtor's reputation, and so on. The automatic stay at the commencement of the case takes the pressure off the debtor.

to request conversion of the Chapter 13 case to a case under Chapter 7 or outright dismissal of the Chapter 13 case for "material default by the debtor with respect to a term of a confirmed plan," 11 U.S.C. § 1307(c)(6), would be rendered superfluous if appellant and other creditors were free to proceed against the debtor under nonbankruptcy law at the instance of postpetition default.[12] This Court does not believe that Congress intended to permit such an emasculation of the Bankruptcy Code.

In summary, therefore, the Court concludes that the automatic stay provision of 11 U.S.C. § 362 is applicable in this case. Consequently, the Bankruptcy Court did not err in adjudicating an adversary proceeding based upon an alleged violation of the stay or in finding that appellant's conduct constituted such a violation of the stay.

### B. *Willfulness; Actual and Punitive Damages*

With respect to three of the remaining issues raised on appeal, Jim Walter Homes, Inc. challenges the Bankruptcy Court's findings as to (1) the willfulness of appellant's conduct; (2) the actual damages incurred as a result of appellant's actions; and (3) the appropriateness of the punitive damages imposed under the circumstances. Appellant specifically contends that the evidence does not support any of the aforementioned findings.

 The Court first agrees with appellant that, in contrast to sanctions for civil contempt, which merely require as a condition precedent that a specific and definite court order be violated by a party that has knowledge of the court's order, sanctions under 11 U.S.C. § 362(h) require the conduct of the offending party to be willful. *See, e.g., In re Tel-A-Communications Consultants, Inc.*, 50 B.R. 250, 253 (Bankr. D.Conn.1985). Here, the Bankruptcy Judge made a specific factual finding that appellant "knowingly and willfully violated

the automatic stay." Upon careful review of the record, the Court concludes that the Bankruptcy Judge's finding of willfulness is amply supported by the evidence and, therefore, is not clearly erroneous. The record demonstrates that notices of debtors' Chapter 13 case were mailed to appellant by the court and that such mailings were not returned unclaimed. Joey Pilgrim, appellant's field representative, while denying that he ever saw such notices, testified that such notices were normally routed to the appropriate corporate officials and attorneys and that he could not definitely say that such notices were never received by appellant. In addition, the debtors each testified that they had orally communicates to Mr. Pilgrim their financial circumstances and bankruptcy status. It was, therefore, not unreasonable for the Bankruptcy Judge, given his opportunity to observe the demeanor of the witnesses, to question the reliability of Mr. Pilgrim's testimony. Consequently, it was not reasonable for the Bankruptcy Judge to find that the appellant had received ample notice of the debtors' status in bankruptcy, but willfully chose to act in contravention to the provisions of the Bankruptcy Code of which appellant was fully cognizant.

The Court further concludes that the Bankruptcy Judge's valuation of the debtors' property is not clearly erroneous in that it is also amply supported by the evidence of record. Despite appellant's contention that the only credible evidence was that of the appellant's field representative, Joey Pilgrim, to the effect that the fair market value for the property was $34,000.00, the record reveals that Mr. Pilgrim was unable to testify as to the alleged "wear & tear" on the house which caused it to depreciate substantially over a two year period and admitted that he could not remember "exactly what the house looked like on the inside." (Transcript at p. 46). Mr. Pilgrim further testified: "All I can go by is based on the fact that I sold the

---

**12.** The provision utilized by the Bankruptcy Court for the Northern District of Alabama in its confirmation orders by which a holder of a residential property mortgage may foreclose immediately without court sanction upon debtor's

default under the plan is inapposite. Appellant does not contend, nor does the record reveal, that it requested such a provision to be included in the confirmation order issued in this case.

house for [$34,500.00] and I wouldn't have sold it for it if I could have gotten more." (Transcript at pp. 46–47). The record further reveals that the Bankruptcy Judge accepted the debtors' opinion of the property's value only after careful consideration of such factors as the value of the land itself and the improvements made by the debtors to the house. The Bankruptcy Judge specifically found it incredulous that the property could have depreciated in two years time to the extent alleged by appellant's sole witness. Based on the record, it was not unreasonable for the Bankruptcy Judge, sitting as a trier of fact, to question the reliability of appellant's property appraisal and to adjust the value accordingly. *Hammons, supra,* 614 F.2d at 402–03.[13] Accordingly, this Court concludes that the valuation of $45,000.00 as to the debtors' property and, therefore, the determination that actual damages of $3,063.71 resulted from appellant's actions were not clearly erroneous.[14]

 Appellant next contends that the evidence does not support an award of punitive damages in this case. Appellant specifically asserts that punitive damages may only be considered when the circumstances are "*more* than willful" and are "especially egregious or aggravated." The Court disagrees with appellant's characterization of the behavior upon which punitive damages must be predicated. Congress did not define or limit the circumstances under which the court could impose punitive damages beyond the requirement that the violation of the stay must be "willful."[15] Congress, wisely in this Court's opinion, left the determination of what willful violations of the stay warranted the imposition of punitive damages and what amount of punitive damages were appropriate under the circumstances to the discretion of the Bankruptcy Court. This Court will disturb the Bankruptcy Judge's determinations relative to punitive damages only if the imposition of such damages is so arbitrary and capricious as to constitute an abuse of discretion. Cf. *Carlucci v. Piper Aircraft Corp., Inc.,* 775 F.2d 1440, 1446–47 and 1453 (11th Cir.1985). *See also, Haitian Refugee Center v. Meese,* 791 F.2d 1489 (11th Cir.1986) (discretion regarding award of attorney's fees under Equal Access to Justice Act); *Hendrix v. Raybestos-Manhattan, Inc.,* 776 F.2d 1492 (11th Cir.1985) (discretion regarding consolidation of cases); *Wahl v. McIver,* 773 F.2d 1169 (11th Cir.1985) (discretion regarding the entry of default judgment for failure to prosecute or to comply with court orders); *United States v. Merchants National Bank of Mobile,* 772 F.2d 1522 (11th Cir. 1985) (discretion regarding denial of summary judgment); *Hill v. Seaboard Coast Line R.R. Co.,* 767 F.2d 771 (11th Cir.1985) (discretion regarding award of attorney's fees in employment discrimination case); *United States v. $239,500 in U.S. Currency,* 764 F.2d 771 (11th Cir.1985) (discretion regarding dismissal as sanctions for failure to provide discovery). Under the circumstances presented in the case at bar, this Court concludes that the award of punitive damages in the amount of $2,000.00 was neither arbitrarily or capriciously imposed and does not evidence an abuse of the Bankruptcy Judge's discretion under § 362(h).

In summary, the Court concludes that the Bankruptcy Judge's findings as to the willfulness of appellant's conduct and the actual damages incurred as a result of appellant's violation of the stay are amply supported by the evidence of record and, therefore, are not clearly erroneous. The Court further concludes that the $2,000.00 award of punitive damages is due to be affirmed inasmuch as nothing in the record

---

13. This Court cannot overturn the Bankruptcy Court's findings of fact simply because the evidence was conflicting. *Georgia State Conf. of Branches of NAACP v. State of Georgia,* 775 F.2d 1403, 1419 (11th Cir.1985).

14. The Court is unpersuaded that the damages envisioned by 11 U.S.C. § 362(h) do not include the loss of value damages assessed in this case.

15. Section 362(h) provides that:
> An individual injured by *any willful* violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, *in appropriate circumstances,* may recover punitive damages.

(Emphasis added).

indicates that the Bankruptcy Judge abused his discretion.

### C. *Attorney's Fee*

██ Jim Walter Homes, Inc. next challenges the Bankruptcy Court's award of an attorney's fee to the Trustee in the amount of $2,500.00 on the ground that no evidence appears in the record to support such an award. The Court must concur with appellant on this point. The record is devoid of any evidence to support the award. While it is true that the Bankruptcy Code does not expressly require the filing of a written fee application, such a written application seems inherently required in light of the restrictions contained in 11 U.S.C. §§ 326, 328(b) and 330, as well as the Bankruptcy Court's undisputed obligation to assess the reasonableness of the fees sought. In addition, it cannot seriously be contended that parties in interest, such as the appellant here, have no right to examine and contest, item by item if they desire, the appropriateness of the fees sought. In the absence of evidence which supports the reasonableness of the attorney's fee award to the Trustee in this case, this Court can but find that the award is, at the very least, arbitrary and clearly constitutes an abuse of the Bankruptcy Court's discretion in this matter. Consequently, the Court must reverse this portion of the Bankruptcy Court's order of December 30, 1986 and remand the issue for further consideration.

For the above stated reasons, it is ORDERED, ADJUDGED and DECREED that the Bankruptcy Court's decision of December 30, 1986 be and is hereby AFFIRMED in all respects except the award of an attorney's fee to the Trustee in the amount of $2,500.00, which is hereby REVERSED and REMANDED for further consideration not inconsistent with this order.