**In the Matter of James Riley WALLACE, Bankrupt.**

**WOHLNER & ASSOCIATES, Appellant,**

v.

**WESLEY MEDICAL CENTER and John Stonitsch, Trustee, Appellees.**

No. 88–0273–CV–W–9.

United States District Court, W.D. Missouri, W.D.

June 23, 1989.

Charles W. Nichols, Kansas City, Mo., for James Riley Wallace.

Bruce Strauss, Kansas City, Mo., for Wesley Medical Center.

John R. Stonitsch, Kansas City, Mo., trustee.

Thomas E. Thompson, Kansas City, Mo., for Wohlner & Associates.

## ORDER REMANDING CASE FOR ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

BARTLETT, District Judge.

The law firm of Wohlner & Associates appeals from the February 3, 1988, order of Bankruptcy Judge Karen M. See denying its application for *pre-bankruptcy* attorney fees ($12,500), expenses ($946.42) and advances ($5,000) on behalf of the debtor.[1] Appellant asserts that 1) it had a perfected attorney's lien on $18,446.42 of a $25,000 settlement obtained for the debtor; 2) the lien gave it an absolute right to its "share" of the settlement proceeds in the hands of the Chapter 13 debtor-in-possession; and 3) appellant is now entitled to $18,446.42 of the settlement proceeds.[2]

Appellees Wesley Medical Center (a competing creditor) and the Chapter VII trustee[3] argue that Judge See's order denying Wohlner's claim for $18,446.42 was proper because 1) appellant failed to disclose its claim in the December 12, 1983, bankruptcy petition as required by the Bankruptcy Code; 2) appellant is not a disinterested party according to 11 U.S.C. § 101(13)(A)

---

1. The appellant's application for attorney fees arises out of its efforts on behalf of Mr. and Mrs. James Wallace in obtaining a settlement after Mr. Wallace was severely injured in a car accident.

2. The debtor has received his discharge and will not be affected by this litigation. The $18,-446.42 in dispute here will go either to the appellant or to other creditors of the debtor.

3. The Chapter 13 case was converted to a Chapter 7 on September 5, 1986.

and (E); 3) appellant failed to file a proof of claim as specifically directed by Judge See at the September 23, 1986, hearing; and 4) appellant's advancements of money on behalf of the debtor violate the Missouri Code of Professional Conduct.

### Standard on Appeal

This court has jurisdiction pursuant to 28 U.S.C. § 158(a). Bankruptcy Rule 8013 provides that on appeal the district court

> may affirm, modify, or reverse a bankruptcy court's judgment, order or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to adjudge the credibility of the witnesses.

The Advisory Committee Notes state that Rule 8013 accords to the findings of a bankruptcy judge the same weight given the findings of a district judge under Rule 52, Federal Rules of Civil Procedure.

A finding is clearly erroneous when the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The district court must independently determine questions of law or mixed questions of law or fact. *In re Multiponics, Inc.*, 622 F.2d 709, 713 (5th Cir.1980); *In re Hammons*, 614 F.2d 399, 403 (5th Cir.1980).

### The Bankruptcy Court's Opinion

After hearing arguments at the September 23, 1986, hearing,[4] the bankruptcy court found that:

> Wohlner is not entitled to payment of pre-bankruptcy attorney fees and costs because the firm failed to timely file a creditor's proof of claim; repayment of the personal advance from the estate would be improper as the original transaction was improper under the Missouri Code of Professional Conduct; and further, the firm failed to disclose its prepetition claim in the schedules of debts, statement of affairs or other initial

pleading, and the firm is not a 'disinterested' party, thus disqualifying the firm from payment.

February 3, 1988, order (Doc. 29) at 2.

The primary reason for denying Wohlner's applications was failure to file a timely creditor's proof of claim:

> In the original application for attorney fees Wohlner did not allege its claim was secured. For the first time at the hearing (and in the motion for reconsideration), Wohlner contended it had a perfected attorney's lien under Missouri law and that attorney fees of $12,500.00, a cash advance to the client in the amount $5,000.00, and $946.42 for expenses and miscellaneous advances on behalf of its client, the debtor, should be paid as a priority debt as a secured claim of the estate. Even though the amounts sought are a prepetition debt, the Wohlner firm, which was debtor's bankruptcy counsel of record, did not list this debt as a priority, secured or unsecured debt in the original schedules filed in December 1983 or in the amended schedules filed in July 1986.

> Wohlner is not entitled to payment of the fees and payments for expenses and an advance to the client because it failed to file a timely proof of claim. On September 23, 1986, a hearing on this issue was held. At that time, the Court advised the counsel for Wohlner that it was denying the application for attorney fees without prejudice. The Court further advised counsel that if the firm chose to continue with its claim, a creditor's proof of claim should be filed within the time limit set forth in the Bankruptcy Rules so the trustee could examine it and determine whether to object to it. Just prior to the hearing, debtor converted to a Chapter 7 proceeding. At the hearing the trustee indicated he had been notified of his appointment only the day before and had not had an opportunity to review Wohlner's application for payment. The trustee further argued that whether the claim for prepetition, non-bankruptcy services

---

4. Judge See requested legal arguments only at this hearing; it was not an evidentiary hearing.

and expenditures was secured or unsecured, a proof of claim should be filed so the trustee could review it as he would normally do with all claims in a file. The final date for filing claims was January 20, 1987, as calculated pursuant to Bankruptcy Rule 3002(c) and as noted in the § 341 creditor's meeting notice, which was mailed to counsel and all creditors. However, disregarding the Court's direction, Wohlner thereafter failed to file a proof of claim for its prepetition legal fees and advances. The firm, as debtor's counsel in bankruptcy, was obviously aware of the bar date, as set forth in the § 341 notice, and the necessity for all creditors to file claims in order to participate in distribution of the debtor's assets in a Chapter 7 case. Accordingly, the Court is unable to approve the prepetition legal fees and repayment of a personal loan and expenses due to Wohlner's failure to file a proof of claim with attached documentation of the debt and any claimed secured status.

February 3, 1988, order at 3–5.

Two alternative reasons were given by the bankruptcy court for denying the Wohlner application:

> There is a second reason for disallowance of a portion of the payment Wohlner seeks. In furtherance of its efforts to obtain the final settlement, dispose of the dispute with Wesley Medical Center and get the insurance draft proceeds, Wohlner advanced $5,000 to debtor to pay Wesley Medical Center part of its debt (not to be confused with advances for litigation or routine miscellaneous expenses). Such a loan by the lawyer, made in anticipation of then achieving a settlement, constitutes financial assistance to a client in connection with pending or contemplated litigation and also constitutes acquisition of a proprietary interest in the subject matter of the litigation. Such a loan to a client is expressly prohibited by Rule 1.8(e) and (j) of the Rules of Professional Conduct for the Missouri Bar (set forth in Rule 4, Missouri Supreme Court Rules). This Court will not condone unprofessional behavior by allowing payment to an attorney on a prohibited transaction.

> Furthermore, even if Wohlner had filed a timely claim and proved itself to be a secured creditor, payment of the prepetition debt must be denied because the law firm is not a 'disinterested' party to the estate. The Wohlner firm not only represented the debtor in the instant bankruptcy proceedings, but it is also a prepetition creditor of the estate as to the prepetition attorney fees, loan to client and expenses. Thus, the firm is not a disinterested party under 11 U.S.C. 101(13)(A), (E), which excludes as disinterested parties creditors, insiders, and parties with 'an interest materially adverse to the interest of the estate or any class of creditors ... by reason of any direct or indirect relationship to, connection with, or interest in, the debtor.' See *In re Pierce*, 809 F.2d 1356, 1362 (8th Cir.1987).

> Obviously Wohlner's interest in receiving attorney fees for prepetition work and repayment of a $5,000 personal loan renders the firm an interested party with an interest adverse to that of other creditors. That position constitutes a conflict of interest. *In re Roberts*, 46 B.R. 815, 849 (Bankr.D.Utah 1985). This conflict of interest was not disclosed when the case was filed, either in the statement of affairs (Chapter 13 statement), disclosure of compensation, schedules, or any other pleading. Here, the conflict of interest is not merely potential. There is an actual conflict as evidenced by the fact that [at the September 26, 1986, hearing] a Wohlner attorney appeared for debtor, another attorney appeared for the Wohlner firm in its capacity as a creditor, and the trustee and an unsecured creditor with an interest adverse to Wohlner's disputed its right to post-petition payment of a prepetition claim.

> Wohlner cannot represent debtor in bankruptcy and also seek payment of its prepetition claim. The firm chose to represent debtor in bankruptcy court and disclose only the payment of bankruptcy attorney fees. The firm chose not to disclose at the outset of the case its

conflict of interest due to its adverse interest as a creditor. At the least, Wohlner's failure to make full disclosure must be deemed a waiver of the prepetition amounts owed for attorney fees, expenses and repayment of a personal loan.

*Id.* at 5–6.

At the September 23, 1986, hearing on Wohlner's "Application for Allowance of Attorney's Fees," Judge See stated:

All that has been shown to me today by the statements of Mr. Thompson and Mr. Nichols is that this was a pre-bankruptcy claim. The debt arose before bankruptcy, the money was paid or payable before bankruptcy, it was in the hands of the attorneys at one time before bankruptcy, however it was not in a check which they wanted to negotiate, it was in a check that was apparently paid to more parties than they desired and they failed to cash it at that time. It has not been shown to me that this is anything other than an unsecured claim. And along the same line would be the advances that were made for the $5,000 to Wesley Medical Center which were not made by the debtors, apparently. They were made by the law firm, according to what you've stated today, so that apparently creates another claim on behalf of the law firm against the debtors or the debtor's Chapter VII estate. As to advances made by this law firm for the debtor to file bankruptcy, I don't consider that to be within any personal injury recovery or within any contingent fee contract. Those are for bankruptcy services. I am going to deny the application. This is a determination that is without prejudice insofar as the law firm is now free to proceed with filing a claim in the chapter VII case and it may file a claim for an unsecured debt or if it can prove of the Kansas or Missouri lien to show that it has a secured claim on those fees, then it should file a secured claim. But you come here and argue today to me that you have a lien and you're very general about it. And you have not raised this in your pleadings. You have not attached documentation to show me that you are claiming a lien. You just keep saying that I did the work and I want the money. So file a secured or an unsecured claim, whatever you want, but it will come up and be subject to review and objection by the Trustee and I think that's the way to approach it. This is not a post-petition situation for attorney's services that were performed post-petition. It's simply a pre-petition claim. So —Mr. Strauss if you'll please prepare an order on that—

Mr. Strauss: Yes, Your Honor.

The Court: —and if you all will keep track of the time for the filing of claims since it's now been converted to a VII I don't know if the 341 has been set yet, but you'll have a deadline pegged from the 341 meeting so keep that in mind.

Transcript of September 23, 1986, hearing at p. 34, 1.20—p. 36, 1.11.

### Discussion

On appeal, Wohlner argues that the law firm had a perfected attorney's lien pursuant to R.S.Mo. §§ 484.130 and 484.140 and that under § 545 of the Bankruptcy Code the trustee has no authority to avoid a written contingent fee contract which has been perfected and paid.[5] Appellant as-

---

5. Wohlner's characterization of its lien as "paid" is inaccurate even though the firm at one point actually held the $18,446.42 in its accounts. The December 20, 1983, $25,000 check reflecting the settlement was issued to "Clerk of the Bankruptcy Court for the Western District of Missouri, James R. Wallace, Barbara Wallace and Alan J. Fleming, Attorney for James Wallace." The check was received by the bankruptcy court on December 22, 1983. The $25,000 was paid out to the debtor by order of Chief Bankruptcy Judge Dennis Stewart because the debtor was pursuing Chapter 13 relief. January 31, 1984, Findings of Fact, Conclusions of Law and Final Order Directing Payment of $25,000 Plus Any Earned Interest to Debtor But Conditioning Discharge of Debtor in Chapter 13 Proceeding on Use of Unexempt and Unencumbered Portion of Proceeds to Pay Creditors Through Chapter 13 Plan. From the $25,000 paid to the debtor, the law firm took its $18,446.42 and gave the debtor the remaining $6,553.58 which the debtors applied to various debts. On motion of debtor (represented in bankruptcy by Wohlner & Associates), Judge Stewart dismissed the Chapter 13 case on February 10, 1984.

serts that the entire settlement proceeds were the property of the debtor in possession and that when the funds from the bankruptcy court came into the hands of the firm, the attorneys had an "absolute right to deduct their attorney's fees, expenses and advances from the proceeds of the settlement and turn over the net balance to their client." Appellant's April 13, 1988, brief at 12. Appellant seeks an evidentiary hearing.

This case has had a lengthy and difficult history and I am not eager to prolong resolution of the last remaining issue. However, an evidentiary basis is necessary to support the bankruptcy judge's findings and to give me a record upon which to review the court's findings of fact. Further, as the record now stands, it is unclear to me whether the bankruptcy court found that 1) Wohlner had a lien and failed to file an appropriate claim to preserve it, or 2) Wohlner never had a lien and failed to file an unsecured creditor's claim.

Therefore, the bankruptcy court is requested to develop an adequate factual record by holding an evidentiary hearing or by stipulation of the parties in order to make findings and conclusions on the following issues: 1) Did Wohlner have a valid attorney's lien under Missouri law for $18,442 or any portion thereof, or was Wohlner's claim an unsecured pre-petition claim? 2) If Wohlner had a valid lien for any amount, was it necessary under the circumstances of this case for Wohlner to file a claim with the bankruptcy court to obtain payment, or did the lien give Wohlner an absolute right to funds as they passed through Wohlner's hands? 3) If Wohlner had a valid lien for any amount and it was necessary to file a claim with the bankruptcy court, did any of the doc-

uments Wohlner filed adequately preserve its lien thereby entitling Wohlner to payment at this time?

Accordingly, it is hereby ORDERED that this case is remanded for supplemental findings of fact and conclusions of law on the above issues.

On November 20, 1985, Judge Wright set aside Judge Stewart's dismissal of the Chapter 13 bankruptcy stating:

> [I]n this case, numerous rules of procedure were violated, oral promises broken, and measure was taken which resulted in the attorneys receiving over $18,000 (almost 75% of the money involved). Even if it can be believed that Wallace's attorneys were ignorant of the law, once they had actual notice from the Bankruptcy Court judge, there is no ex-

cuse for their continued involvement in this scheme to avoid payment of a lawful debt owed to movant [Wesley Medical Center].

*In re Wallace,* 57 B.R. 364, 365 (W.D.Mo.1985).

Under extreme protest, Wohlner paid the $18,446.42 back into the bankruptcy court in the form of a surety bond on November 26, 1986, and Judge Wright remanded the case. Following Judge See's hearing on September 23, 1986, and her written order of February 3, 1988, Wohlner appealed.