**In re Thelma WHIGHAM, Debtor/Appellant.**

**No. 95–CV–72856–DT.**
**Bankruptcy No. 94–49444–R.**

United States District Court,
E.D. Michigan,
Southern Division.

April 24, 1996.

Stuart M. Rudick, Southfield, MI, for Thelma Whigham.

Julie Canner, Troy, MI, for Ford Motor Co.

## OPINION

DUGGAN, District Judge.

### I. Background

On September 14, 1992, debtor executed a retail installment contract with Ford Motor Credit Company ("creditor") to finance the purchase of a 1992 Tempo. Under that contract, debtor agreed to make 48 consecutive monthly payments of $278.80. Creditor holds a security interest in the Tempo to secure these payments.

On September 20, 1994, debtor filed a Chapter 13 petition for bankruptcy. On December 5, 1994, debtor's Chapter 13 case was confirmed. The confirmed plan ("the Plan") provided for bi-weekly payments of $331.85 ($719/mo) to the Chapter 13 trustee with payments to creditor on its secured claim of $7,258.55 over a 36-month period. The Plan provides in part:

> Upon confirmation of the Plan, all property of the estate shall vest in the debtor [11 U.S.C. § 1327(b) ].[1]

Plan ¶ I.D. (alteration in original).

On June 8, 1995, creditor filed a motion for relief from the automatic stay[2] alleging that debtor was past due on payments to creditor under the Plan. (Creditor's Resp. Br., Ex. B ¶ 2). Creditor also alleged that debtor's confirmed plan was not adequately funded. *Id.* ¶ 10. Based on debtor's alleged default and the depreciating nature of the Tempo, creditor alleged:

> Continuation of the automatic stay will work real and irreparable harm to [creditor] and will deprive [creditor] of the adequate protection to which it is entitled for the following reasons, among others:
> a. Debtor may be without funds necessary to preserve and maintain the ve-

---

1. That section provides that "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b).

2. In its motion, creditor asserted that pursuant to 11 U.S.C. § 362(a), the filing of debtor's petition operated as an automatic stay against creditor's rights as a secured creditor to proceed against debtor and her property.

hicle in good working condition and the value of the vehicle has depreciated and will continue to decline.

b. Interest continues to accrue on [creditor's] claim against Debtor's and Debtor's Contract is seriously in arrears.

c. Debtor is in arrears to the Trustee in the approximate amount of ... ($1,327.42) Dollars.

*Id.* ¶ 13. *See* 11 U.S.C. §§ 361(3), 362(d)(1).[3]

On July 13, 1995, Bankruptcy Judge Steven W. Rhodes conducted a hearing on creditor's motion for relief from the stay. Creditor's counsel began the hearing by indicating that it filed the motion due to arrearages owed in the Plan and therefore, it was seeking relief from the stay. (Hr'g Tr. at 3, 4). Debtor's counsel, believing that creditor would receive more money "very quickly", asserted that debtor would be up-to-date in payments as soon as insurance money came in from a disability claim. *Id.* at 5, 6.

Judge Rhodes inquired, "is this car property of the estate, or not?" *Id.* at 9. Creditor's counsel responded affirmatively, while the trustee indicated that the Plan provided for the vesting of the property in debtor upon confirmation. *Id.* Judge Rhodes then ruled:

This property is no longer—

\* \* \* \* \* \*

—property of the estate, and I intend to enter an order to that effect.

*Id.* at 11. Creditor's counsel then indicated that she would supply the court with an order to that effect. However, on July 14, 1995, Judge Rhodes issued an order (which was prepared by creditor's counsel) granting creditor's motion for relief from automatic stay ("the Order"). The Order provides:

The Court having determined that continuation of the Automatic Stay against [creditor] would deny them the adequate protection afforded to them on their security interest pursuant to 11 USC § 361(3),

as the estimated fair market value of the 1992 Ford Tempo is ... ($6,275.00) ... and the amount of [creditor's] secured claim is ... ($7,628.30). . . .

Order at 1. Judge Rhodes ordered that creditor's motion be granted, that the automatic stay be lifted allowing creditor to enforce its security interest, and that debtor immediately submit possession of the Tempo to creditor. *Id.* at 1–2.

On July 17, 1995, debtor filed a bankruptcy appeal in this Court under 28 U.S.C. § 158 challenging Judge Rhodes' July 13, 1995 decision and July 14, 1995 order. On September 5, 1995, debtor filed her brief in support of appeal.

On September 6, 1995, Judge Rhodes issued a supplemental opinion which was meant to supplemental his decisions made on the record in open court on July 13, 1995. (Creditor's Resp. Br., Ex. C). In this supplemental opinion, Judge Rhodes indicated that "[a]t the hearings on these motions [including creditor's], *the Court concluded that relief from the stay was unnecessary because the stay was no longer in effect.*" *Id.* at 2 (emphasis added). Judge Rhodes ruled that under 11 U.S.C. § 362(c)(1), the automatic stay terminated upon the vesting of estate property in debtor upon confirmation. *Id.* The court then rejected another debtor's argument that 11 U.S.C. § 362(a)(5) still operates as a stay of any act to enforce against property of the debtor any lien that secures a pre-petition claim. *Id.*[4] For those reasons, Judge Rhodes concluded that "the stay is no longer in effect in these cases [including debtor's], and the creditor's motion to lift stay is unnecessary." *Id.* at 3.

Following Judge Rhodes' issuance of the supplemental opinion, creditor filed its response brief to debtor's appeal; debtor then filed two additional briefs; and finally, on November 28, 1995, the Chapter 13 standing trustee filed an amicus curiae brief in support of debtor. On appeal, debtor argues that 11 U.S.C. § 362(a)(5), (c)(2) operates as

---

**3.** Under 11 U.S.C. § 362(d)(1), "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section ... (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; . . . ."

**4.** Debtor raises the same argument on appeal.

an automatic stay even after the property of the estate vested in debtor. Creditor contends that Judge Rhodes correctly ruled that the automatic stay was no longer in effect as of December 5, 1994 (date the Plan was confirmed) consistent with 11 U.S.C. § 362(c)(1).

## II. Discussion

A Chapter 13 case is commenced by the filing of a Chapter 13 petition. 11 U.S.C. § 301.... The commencement of the case creates an estate which includes, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541, ... with the debtor remaining in possession of the property of the estate, except as provided in the confirmed plan or the order confirming the plan, 11 U.S.C. § 1306(b). The confirmation of a plan vests all of the property of the estate in the debtor. 11 U.S.C. § 1327(b). From the time of the filing of the Chapter 13 petition, the "automatic stay" provisions of § 362 restrict the actions of creditors against the property of the estate or of the debtor, "prohibiting most acts and the commencement or continuation of most civil actions to collect a consumer debt." ... Besides being a fundamental debtor protection, the stay provisions prevent some creditors from obtaining payment in preference to and to the detriment of other creditors.

Foster v. Heitkamp (In re Foster), 670 F.2d 478, 483 (5th Cir.1982) (citations omitted). See Boatmen's Bank of Tenn. v. Embry (In re Embry), 10 F.3d 401, 403 (6th Cir.1993) ("The filing of a bankruptcy petition automatically stays 'any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the bankruptcy case....' "). The automatic stay provision in bankruptcy provides in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section

301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

\* \* \* \* \* \*

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;[5]

\* ' \* \* \* \* \*

(c) Except as provided in subsections (d), (e), and (f) of this section—

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under ... chapter ... 13 of this title, the time a discharge is granted or denied.

11 U.S.C. § 362(a)(5), (c). "Under § 362(c)(1), an automatic stay prevents 'acts against property of the estate.' The prohibition 'continues until such property is no longer property of the estate.' § 362(c)(1)." Bigelow v. Commissioner of Internal Revenue, 65 F.3d 127, 129 (9th Cir.1995). In Borman v. Raymark Indus., Inc., 946 F.2d 1031 (3d Cir.1991), the Court held:

under § 362(c)(1), the stay of an action against property of the estate continues only until the property is no longer part of the estate, while under § 362(c)(2), the "stay of any other act" continues until the bankruptcy case is closed or dismissed, or a discharge is granted or denied. Thus, § 362(c) also contemplates that the automatic stay applies to actions other than those to obtain property of the estate.

Id. at 1035–36 (internal citation omitted).

Congress described the purpose of § 362(c) and the interrelationship of paragraphs (1) and (2) contained therein as follows:

---

5. "Paragraph (5) stays acts to create, perfect or enforce liens securing pre-petition claims against property of the debtor as distinguished from

property of the estate." 2 Collier on Bankruptcy ¶ 362.04[5] (15th ed.).

Subsection (c) of section 362 specifies the duration of the automatic stay. Paragraph (1) terminates a stay of an act against property of the estate, such as by sale, abandonment, or exemption. *It does not terminate the stay against property of the debtor if the property leaves the estate and goes to the debtor.* Paragraph (2) terminates the stay of any other act on the earliest of the time the case is closed, the time the case is dismissed, or the time a discharge is granted or denied. . . .

*Allen v. Jim Walter Homes, Inc. (In re Hartley),* 75 B.R. 394, 397 (S.D.Ala.), *vacated on other grounds,* 80 B.R. 230 (S.D.Ala.1987) (citing S.Rep. No. 989, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838 and H.R.Rep. No. 598, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299) (emphasis added). *See United States v. Fingers (In re Fingers),* 170 B.R. 419, 427 (S.D.Cal.1994).

In *Citicorp Homeowners, Inc. v. Willey (In re Willey),* 24 B.R. 369 (Bankr.E.D.Mich. 1982), the court held that:

[b]y virtue of 11 U.S.C. § 1327(b), confirmation of the Chapter 13 plan revests the property of the estate in the debtor. In this respect § 362(c)(1) would not bar lifting the stay, however since discharge of debts under Chapter 13 normally takes place following completion by the debtor of all payments under the plan (11 U.S.C. § 1328(a)), § 362(c)(2)(C) continues the stay until completion of the plan.

Good sense and the intent of Chapter 13 dictate that the debtor should be protected by the stay during the full course of the rehabilitation process.

*Id.* at 373. *See Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin),* 179 B.R. 913, 925 (Bankr.E.D.Cal.1995) ("For actions that are directed against the debtor or property of the debtor, the stay expires at the earliest of the time the case is closed, the time the case is dismissed, or the time a discharge is granted or denied. 11 U.S.C. § 362(c)(2)").

In *Sears, Roebuck & Co. v. Burgess (In re Burgess),* 163 B.R. 726 (Bankr.M.D.Pa.1993), in discussing the issue before this Court, the court stated:

An examination of 11 U.S.C. § 362(c)(1) states that "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; . . .".

As we know from a review of 11 U.S.C. § 541, the commencement of a bankruptcy case creates an estate comprised of all the legal or equitable interest of the Debtor in property as of the commencement of the case. Clearly, the collateral of [the secured creditor] was property of the estate at the time this Chapter 13 was filed.

To determine whether this "property of the estate" remains so defined, we must turn our attention to 11 U.S.C. § 1327(b) which reads as follows:

Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

The plan having been confirmed on December 3, 1991, the collateral of [the creditor] was no longer "property of the estate" since this property now became vested in the Debtors.

Nevertheless, Section 362(a)(5) provides that the bankruptcy filing stays any entity from pursuing "any act to create, perfect, or enforce against *property of the debtor* any lien to the extent that such lien secures a claim that arose before the commencement of the case . . ."

Accordingly, although 11 U.S.C. § 362(c)(1) would not apply post confirmation, Section 362(c)(2) would be applicable and would continue the stay against property of the debtor until closing of the case, dismissal of the case or discharge of the debtor, whichever first occurs.

*Id.* at 728–29 (emphasis in original).

However,

[p]re-petition creditors who have not been paid as promised in the [confirmed] plan have argued that collection efforts against the collateral securing the claim may proceed without permission of the bankruptcy court because plan confirmation transforms a pre-petition claim into a

post-petition claim and property of the estate into property of the debtor.

Michaela M. White, *The Effects of Chapter 13 Plan Confirmation and Case Conversion on Property*, 26 Creighton L.Rev. 785, 785 (Apr. 1993). These creditors have argued that:

plan confirmation effects a metamorphosis of a pre-petition claim into a post-petition claim, at least insofar as defaults under the plan are concerned. This position, when combined with the view that plan confirmation ... transforms property of the estate into property of the debtor, allows the secured creditor to immediately enforce all state court remedies without first obtaining permission from the bankruptcy court. This result follows because the automatic stay terminates with respect to property of the estate when it is no longer property of the estate, and only pre-petition claim enforcement against the debtor and the debtor's property is enjoined under the terms of section 362(a).

*Id.* at 791. Creditor makes this argument in opposition to debtor's appeal.

In *In re Nicholson*, 70 B.R. 398 (Bankr. D.Colo.1987), the court adopted that argument, holding that a confirmed plan "has the effect of making a new agreement between the debtor and the creditor with a new obligation to be paid in the manner provided for by the terms of the plan." *Id.* at 400.

If the Debtor defaults post-confirmation in the performance of his obligations under his plan, the secured creditor's remedy is to foreclose the lien which the creditor was granted by the terms of the plan as security for the payments to be made as agreed under the plan. The foreclosure of the lien, under these circumstances, does not constitute an act by the creditor to enforce against property of the debtor a lien securing a claim that arose before the commencement of the Chapter 13 case, nor does it constitute an act to collect a pre-petition claim from the debtor within the meaning of 11 U.S.C. § 362(a)(5) and (6). It is, instead, enforcement of the new agreement evidenced by the plan. Thus, ... the stay provided by Section 362 was not applicable and [the creditor] did not proceed in violation of the stay by seeking

to enforce the Debtor's payment obligations by the expedient of instituting its foreclosure proceedings due to the post-confirmation defaults by the Debtor.

*Id.* at 400-01.

*Compare In re McCollum*, 76 B.R. 797 (Bankr.D.Or.1987), wherein the court rejected the *Nicholson* court's above-cited holdings. The *McCollum* court held that in a chapter 13 case,

[t]he debtor cannot receive a discharge under [11 U.S.C.] § 1328(a) until the plan has been completed and the creditors have received the distribution provided for by the plan and the order of confirmation.

Under *Nicholson*, there would be no need for a discharge under [11 U.S.C.] § 1328(a) after completion of the plan since there would be no remaining debts to discharge. If the property had been encumbered by more than one lien prior to commencement of the case, and *Nicholson* was correct, then all liens after confirmation would be of equal priority....

\*     \*     \*     \*     \*     \*

The mere fact that upon confirmation a chapter 13 plan becomes binding on both the debtor and the creditors does not require a conclusion that upon confirmation the prepetition debts are extinguished and new debts are created. If the debtor completes the plan any balance owing upon the prepetition debts will be discharged under § 1328(a). If the case is dismissed or converted to chapter 7 prior to completion of the plan, the prepetition debts remain unaffected except to the extent that payments have been received.

Section 1325(a)(5)(B) provides further support for the proposition that no debts are extinguished or created by a chapter 13 confirmation. Section 1325(a)(5)(B) requires that unless the holder of a secured claim accepts the plan or the debtor surrenders the property to the creditor, the plan cannot be confirmed unless "the plan provides that the holder of such claim retain the lien securing such claim." The word "retain" imports a lien then in existence, not a lien to be created upon confirmation.

For the above reasons this court disagrees with the holding of *Nicholson* that the stay provided by § 362 expires upon confirmation of a chapter 13 plan.

*Id.* at 800 n. 1. *See Far West Fed. Bank v. Vanasen (In re Vanasen),* 81 B.R. 59, 61 (D.Or.1987); *Mellon Fin. Servs. Corp. v. Broman (In re Broman),* 82 B.R. 581, 582 (Bankr.D.Colo.1988). Citing *McCollum, Vanasen, Broman* and others, Professor White represented that "[t]he majority of courts reject the argument [adopted in *Nicholson*] that confirmation transmogrifies pre-petition claims into post-petition claims." *The Effects of Chapter 13 Plan Confirmation,* 26 Creighton L.Rev. at 792. Professor White proposes that:

> [t]hese issues are best addressed in the context of a motion to lift the stay.... In short, default under the terms of a confirmed Chapter 13 plan should be addressed in the context of a collective proceeding in which the rights of creditors, the debtor's aspirations and ability, and the goals of Chapter 13 are each addressed. Allowing creditors to determine unilaterally the *outcome* of a troubled Chapter 13 case addresses only the rights of creditors. Constructions of the Bankruptcy Code, such as that of the court in *Nicholson,* that facilitate a unilateral determination by creditors of both the fact of default and the debtor's rehabilitation prospects should be avoided. Property of the Chapter 13 estate can be construed to survive confirmation without sacrificing the legitimate rights of creditors where the debtor has failed to pay as promised in the plan.

*Id.* at 793.

■ In the present case, the Court rejects creditor's argument that the confirmation of debtor's Chapter 13 plan created a "new debt" excepting it from 11 U.S.C. § 362(a)(5) and (c)(2)'s provisions for those reasons stated in *McCollum* and its progeny. Although Judge Rhodes ruled that the stay was no longer in effect under 11 U.S.C. § 362(c)(1) based on Paragraph I.D. of the Plan (because the property was no longer property of the estate), the Court believes that creditor's secured claim is subject to the automatic stay under 11 U.S.C. § 362(a)(5) which under Section 362(c)(2) remains in effect.

In rejecting the *Nicholson* holding, this Court specifically disagrees with that court's conclusion that the lien involved was not one that arose before the commencement of the Chapter 13 case. As previously indicated, § 1325(a)(5)(B), refers to the fact that the court shall confirm a plan if "the plan provides that the holder of such claim *retain* the lien securing such claim...." 11 U.S.C. § 1325(a)(5)(B)(i) (emphasis added). Therefore, this Court concludes that the lien sought to be enforced in this case was created pre-petition.

■ Creditor sought relief from the automatic stay based on debtor's failure to make payments to it according to the Plan's terms. At the conclusion of the hearing on July 13, 1995, Judge Rhodes stated that he intended to enter an order to the effect that the property was no longer property of the estate. (Hr'g Tr. at 11). On July 14, 1995, Judge Rhodes signed an order (prepared by creditor's counsel) which indicated that Judge Rhodes had determined "that continuation of the Automatic Stay against [creditor] would deny them the adequate protection afforded to them on their security interest" based on the fair market value ("FMV") of the Tempo and the amount of creditor's secured claim (which was greater than the FMV). The language of such order is not consistent with the findings and conclusions made by Judge Rhodes at the hearing on July 13, 1995. Furthermore, to clarify the intent of his ruling of July 13, 1995, Judge Rhodes issued, on September 6, 1995, a "supplemental opinion" to supplement "decisions made on the record in open court on July 13, 1995." (Supp'l Op. at 1 n. 1). In this "supplemental opinion", Judge Rhodes makes clear that the basis for his ruling (that the automatic stay does not prohibit creditor from enforcing its lien) is because, "the stay is no longer in effect". *Id.* at 3. He therefore concluded that the "creditor's motion to lift stay is unnecessary." *Id.*

Therefore, despite the language of the order of July 14, 1995, it is clear that Judge Rhodes did not enter the order granting relief from automatic stay because he made a

determination that continuing the stay would adversely affect the "adequate protection afforded" creditor. As reflected by Judge Rhodes at the hearing on July 13, 1995 and as contained in his written "supplemental opinion" issued on September 6, 1995, such "order" was based on what this Court believes to be, an incorrect conclusion of law that the automatic stay was no longer in effect. The order. of July 14, 1995 shall therefore be set aside, the "decision" as reflected in the supplemental opinion of September 6, 1995 is reversed, and the cause shall be remanded for a hearing and determination by Judge Rhodes as to whether or not creditor is entitled to relief from the stay for the reasons asserted by creditor as the basis for its motion for relief from automatic stay.

An order reflecting same will be issued forthwith.