In re Florence Ann VANKELL, a/k/a Ann Vankell, a/k/a Florence Vankell, Debtor.

No. 02–33276.

United States Bankruptcy Court, E.D. Tennessee.

May 17, 2004.

Ann Mostoller, Mostoller, Stulberg & Whitfield, Oak Ridge, TN, for Debtor.

William Timothy Hill, Nashville, TN, William Stanton Massa, III, Morristown, TN, for Beneficial Finance.

Gwendolyn M. Kerney, Knoxville, TN, Chapter 13 Trustee.

## MEMORANDUM ON MOTION FOR DISBURSEMENT OF FUNDS AND MOTION FOR RELIEF FROM STAY

RICHARD S. STAIR, JR., Bankruptcy Judge.

The following contested matters are before the court: (1) the Motion for Disbursement of Funds (Motion for Disbursement) filed by the Chapter 13 Trustee on January 30, 2004, requesting that she be authorized to disburse funds received from the sale of the Debtor's residence; and (2) the Motion for Relief From Stay (Motion for Relief) filed by Beneficial Finance (Beneficial) on February 17, 2004. Beneficial objects to the Motion for Disburse-

208

ment, arguing that it held a second mortgage on the Debtor's residence at the time of sale and that it is entitled to payment in full of its claim from the sale proceeds. Alternatively, Beneficial contends that its lien continues to encumber the real property notwithstanding the sale. No party in interest has objected or otherwise filed a response to the Motion for Relief. In resolving the Motion for Disbursement and the Motion for Relief, the court will also consider the Motion to Modify Chapter 13 Plan After Confirmation (Motion to Modify) filed by the Debtor on April 28, 2004. Although not yet set for hearing, the Trustee has indicated her intention to object to the Motion to Modify. Furthermore, the Motion to Modify raises issues the court must necessarily address in resolving the Motion for Disbursement and the Motion for Relief.

An evidentiary hearing on the Motion for Disbursement and the Motion for Relief was held on April 28, 2004. The evidence before the court consists of the Stipulations filed by Beneficial on March 8, 2004, the Revised Stipulations filed by Beneficial on April 28, 2004, and two collective exhibits introduced into evidence.[1]

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (G), and (O) (West 1993).

## I

The following represent undisputed facts of which the court has taken judicial notice. The Debtor filed the Voluntary Petition commencing her Chapter 13 bankruptcy case on June 24, 2002. In Schedule F—Creditors Holding Unsecured Nonpriority Claims, the Debtor listed a debt to Beneficial in the amount of $34,798.03. The listed basis for this debt was a "note." On July 15, 2002, Beneficial filed a proof of

claim in the amount of $34,980.49 (First Proof of Claim), claiming a security interest in the Debtor's residence located at 9405 Dutchtown Road, Knoxville, Tennessee (the Real Property). In support of its First Proof of Claim, Beneficial attached a Home Equity Credit Line Revolving Loan Agreement and a Deed of Trust, both executed by the Debtor on December 22, 2000.

Along with her statements and schedules, the Debtor also filed her proposed Chapter 13 Plan, which was confirmed, without objection, on September 5, 2002 (Confirmed Plan). Under the terms of the Confirmed Plan, unsecured creditors are to receive a dividend of 20%–70%. The Debtor's Confirmed Plan does not provide for the treatment of Beneficial's claim as secured. On December 18, 2002, the Trustee filed an Objection to Claim objecting to the allowance of Beneficial's claim as secured and seeking an order allowing Beneficial's claim as unsecured. The Objection to Claim was served on Beneficial. On December 27, 2002, a Notice to Parties in Interest was served on Beneficial, advising that the hearing on the Trustee's Objection to Claim would be held on February 5, 2003. Beneficial did not respond to the Objection to Claim nor did it appear at the February 5, 2003 hearing. The Objection to Claim was accordingly sustained without opposition and an Order was entered on February 12, 2003, disallowing Beneficial's First Proof of Claim as secured but allowing it to be paid under the Confirmed Plan as unsecured in the amount filed, $34,980.49.

On February 5, 2003, Beneficial filed a second proof of claim, this time in the amount of $39,650.43 (Second Proof of

---

1. Although the Stipulations and Revised Stipulations were filed solely by Beneficial and not joined by the Debtor or Chapter 13 Trustee, the facts set forth therein are supported by the record in the Debtor's case and are not disputed.

Claim). Beneficial also filed the Second Proof of Claim as secured. On February 26, 2003, the court entered an Order Disallowing Duplicate Claim, disallowing the Second Proof of Claim as a duplicate of the First Proof of Claim and gave Beneficial twenty days to file a written exception to the disallowance. As before, Beneficial did not interpose any exception to the disallowance of the Second Proof of Claim.

On August 8, 2003, the Trustee received a check in the amount of $57,217.58 from the Debtor. After inquiry from the Trustee, the Debtor's attorney advised the Trustee by letter dated August 12, 2003, that the Debtor sold the Real Property without court approval. On October 8, 2003, the Trustee filed a Motion for Accounting, requesting detailed information regarding the sale, and an Order granting the Motion for Accounting was entered by the court on November 12, 2003. Pursuant to that Order, the Debtor's attorney filed a Report on Sale of Debtor's Real Property (Report) on November 20, 2003. The Report evidences that the Debtor sold the Real Property for $75,500.00, from which $18,282.42 was deducted, representing payment at closing of settlement charges, closing costs, and the balance due on the Debtor's first mortgage. The remaining $57,217.58 was paid to the Debtor, who in turn, paid it over to the Trustee. Beneficial did not receive any funds from the sale of the Real Property, and in fact, Southeast Title and Escrow, the title company conducting the closing, apparently failed to ascertain that Beneficial held a second mortgage on the Real Property.[2]

The Trustee filed the Motion for Disbursement on January 30, 2004, requesting authorization to disburse the $57,214.58 in accordance with the Debtor's

Confirmed Plan. From those proceeds, unsecured creditors, including Beneficial, would receive their allowed pro rata distribution. Beneficial filed a Response to the Trustee's Motion for Disbursement on February 5, 2004, averring that it holds an unavoided, properly perfected security interest in the Real Property, and that it is, therefore, entitled to payment in full of its claim from the sale proceeds held by the Trustee. In the alternative, Beneficial argues that if it is entitled to receive only the dividend set forth in the Confirmed Plan, the lien on the Real Property remains since it has not been properly avoided or satisfied. In accordance with its alternative argument, on February 17, 2004, Beneficial filed the Motion for Relief, requesting relief from the automatic stay in order to enforce its lien against the Real Property.

As set forth in the February 19, 2004 scheduling Order, the issues the court is called upon to resolve are as follows: (1) whether Beneficial is bound by the terms of the Debtor's Confirmed Plan, which provides for payment of Beneficial's claim as unsecured; (2) whether the $57,217.58 in net proceeds resulting from the sale of the Real Property, currently being held by the Trustee, is impressed with a lien in favor of Beneficial to the extent of the unpaid balance of its claim; (3) whether the Trustee is entitled to disburse the $57,217.58 to unsecured creditors in accordance with the Debtor's Confirmed Plan; and (4) whether Beneficial's Motion for Relief should be granted to allow it to enforce any remaining lien against the Real Property.

In an attempt to compromise these matters, on April 28, 2004, the Debtor filed a Motion to Modify, seeking permission un-

---

**2.** Both Southeast Title and Escrow and the purchasers of the Real Property have been given notice of the present motions and have

been given the opportunity to appear and be heard. Neither has entered an appearance.

der 11 U.S.C.A. § 1329 to modify her Confirmed Plan as follows: (1) to change her payments to the Trustee from bi-weekly payments of $417.50 for 60 months to monthly payments of $300.00 for 40 months; and (2) to pay Beneficial's First Proof of Claim in its entirety from the funds currently being held by the Trustee (Modified Plan).

## II

Confirmation of a Chapter 13 plan is governed by a group of inter-related statutes, beginning with 11 U.S.C.A. § 1325(a) (West 1993), which provides the following criteria governing confirmation of a debtor's plan:

(a) Except as [otherwise] provided ... the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

11 U.S.C.A. § 1325(a) (West 1993).

■ The contents required of a Chapter 13 plan are set forth in 11 U.S.C.A. § 1322, which designates both mandatory (subsection (a)) and permissive (subsection (b)) provisions, including the following provision relevant to this contested matter:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

11 U.S.C.A. § 1322(b)(2) (West 1993). If a party in interest does not agree with its treatment in a proposed Chapter 13 plan, it may object. 11 U.S.C.A. § 1324 (West 1993). However, "a creditor who fails to object to a Chapter 13 plan is deemed to have accepted it." *In re Basham*, 167 B.R. 903, 904 (Bankr.W.D.Mo.1994).

The effect of a Chapter 13 plan confirmation is as follows:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has object-

ed to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C.A. § 1327 (West 1993).

Federal Rule of Bankruptcy Procedure 3002 governs the filing of proofs of claim in Chapter 13 cases, stating that unsecured creditors "must file a proof of claim or interest for the claim or interest to be allowed[.]" FED. R. BANKR. P. 3002(a). "A proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f).

Claims for which a proof of claim has been filed are deemed allowed unless a party in interest objects. 11 U.S.C.A. § 502(a) (West 1993). After notice and a hearing, the court may then disallow any claim that has been objected to. 11 U.S.C.A. § 502(b) (West 1993 & Supp. 2004). Rule 3007, concerning objections to claims, provides that

> An objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing. If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding.

FED. R. BANKR. P. 3007.

In the present case, the Debtor proposed a plan that did not provide for payment of Beneficial's claim as secured. The plan, which was served on all creditors and parties in interest, including Beneficial, was confirmed without objection on September 5, 2002. The Confirmation Order was not appealed, and the Debtor has made the payments required under her Confirmed Plan. Beneficial filed its First Proof of Claim, which was objected to by the Trustee in December 2002. Notice of the Objection to Claim was served on Beneficial, and a hearing was held on February 5, 2003. Beneficial did not file a response to the Objection to Claim, nor did it appear at the hearing thereon. Accordingly, the court entered an Order on February 12, 2003, disallowing Beneficial a secured claim, but allowing it as an unsecured claim in its entirety. Beneficial did not appeal this Order.

■ Nevertheless, the problems before the court have arisen because of the apparent conflict between the claims allowance process and the binding effect of confirmation. Clearly, the Debtor's Confirmed Plan is binding on all creditors, whether or not they are provided for in the Plan, and whether or not they agreed upon their treatment. *See* 11 U.S.C.A. § 1327(a). Additionally, there is no dispute that the Trustee objected to Beneficial's claim, and the court entered an Order disallowing Beneficial's claim as secured. However, Beneficial argues that it is entitled to payment in full of its secured claim because no party ever filed an action to avoid its lien, or, in the alternative, if it is not paid in full, its lien on the Real Property remains, and it should be allowed to commence an action against the Real Property now in the hands of third party purchasers.

## III

■ The first issue is whether the fact that the claim was disallowed avoids

212

the lien without the necessity of an adversary proceeding. As a general matter, unless avoided, "liens pass through bankruptcy unaffected." *Cen–Pen Corp. v. Hanson,* 58 F.3d 89, 92 (4th Cir.1995); *see also Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 2153–54, 115 L.Ed.2d 66 (1991).

> [A]lthough a debtor's personal liability on an underlying debt may be discharged in bankruptcy, the lien created prior to the bankruptcy to secure the debt will survive the bankruptcy discharge and may be enforced by the creditor either following relief from the automatic stay while the bankruptcy case is still pending and the stay is in place or after the bankruptcy case is closed.

*In re Geiger,* 260 B.R. 83, 88 (Bankr. E.D.Pa.2001).

Trustees are afforded the power to avoid liens by the Bankruptcy Code through the filing of an adversary proceeding. *See, e.g.,* 11 U.S.C.A. § 544 (West 1993 & Supp.2004); 28 U.S.C.A. § 157(b)(2)(K) (West 1993); Fed. R. Bankr. P. 7001(2).[3] A trustee may also file an objection to a claim, requesting a determination of the validity or extent of a lien, which "becomes" an adversary proceeding pursuant to Rule 3007 in conjunction with Rule 7001(2). Additionally, under § 502(a), a proof of claim is deemed allowed unless it is objected to by a party in interest, including the Chapter 13 trustee. The conflict arises when, as in this case, the Chapter 13 Trustee moves for and obtains disallowance of a claim by a for-

merly secured creditor, based upon § 506, which provides, in material part:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use[.]
> ....
> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void[.[4]]

11 U.S.C.A. § 506 (West 1993). The Supreme Court, in *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 777–78, 116 L.Ed.2d 903 (1992), reaffirmed that liens against real property remain throughout the bankruptcy process, and in deciding the question of whether a debtor may "strip off" a fully unsecured second mortgage in a Chapter 7 case, held that the disallowance of a claim under § 502 is a prerequisite to avoidance under § 506(d).[5] In other words, the underlying claim must be disallowed if the lien is to be void pursuant to § 506(d).

Subsections (a) and (d) of § 506 do not address the same process. Subsection (a) concerns treatment of allowed claims, while subsection (d) discusses treatment of disallowed claims. Subsection (a) merely

---

**3.** "[A] proceeding to determine the validity, priority, or extent of a lien or other interest in property [is an adversary proceeding.]" Fed. R. Bankr. P. 7001(2).

**4.** Exceptions not applicable in this case.

**5.** "Strip off" is used to describe a situation wherein an inferior mortgage is totally unsecured, such that there is no lien remaining. *In re Davenport,* 266 B.R. 787, 790 (Bankr. W.D.Ky.2001).

provides that a creditor holding an allowed claim that is secured by a lien shall be treated as secured to the extent of the value of the collateral and unsecured to the extent that the amount of the claim exceeds the value of the collateral. On the other hand, subsection (d) does not discuss value at all, does not address the secured and unsecured amounts of a claim, and does not apply unless a claim has already been disallowed.

Pursuant to the court's February 12, 2003 Order, Beneficial's claim was disallowed as secured but allowed as unsecured because there was no provision to pay it as secured in the Debtor's Chapter 13 Plan. On the other hand, the Objection to Claim did not address the validity, priority, or extent of the lien. Beneficial argues that the consequences of not paying off the mortgage and/or initiating an adversary proceeding to avoid the lien is that the lien survives, that the Real Property was sold subject thereto, and that it may now take recourse against the Real Property to satisfy its lien.

■■■ "[I]f a party in interest requests the court to determine and allow or disallow the claim secured by the lien under section 502 and the claim is not allowed, then the lien is void [pursuant to § 506(d) ] to the extent that the claim is not allowed." *Webster v. Key Bank (In re Webster)*, 287 B.R. 703, 707 (Bankr.N.D.Ohio 2002) (quoting H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 357 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6313).

> Yet neither an objection to the allowance of a claim nor the determination of secured status question the existence of the underlying lien securing the claim. Rather, they both assume that the lien is otherwise valid and enforceable. The resulting impact upon the lien is purely incidental to the issues concerning the amount due the creditor and the value of

the creditor's interest in property of the estate.

*In re Beard*, 112 B.R. 951, 955 (Bankr. N.D.Ind.1990). Along those lines, some courts hold that a secured creditor's lien may not be avoided without taking an "affirmative step" to do so; i.e., the filing of an adversary proceeding. *In re Kressler*, 252 B.R. 632, 633–35 (Bankr.E.D.Pa.2000) (affirming that the failure of a secured creditor to timely file a proof of claim does not affect its lien, and after the bankruptcy ends, the creditor may pursue its collateral to satisfy the lien). Under the authority of these cases, a debtor may not use the plan confirmation process to cramdown and avoid a secured creditor's lien. *Geiger*, 260 B.R. at 87; *Kressler*, 252 B.R. at 635.

On the other side, some courts allow for modification and/or avoidance of liens within the contents of a Chapter 13 plan, holding that

> [a]nother means short of an adversary proceeding to modify the lien is the valuation process and the application of § 506(a) and (d). The debtor could have the creditor's collateral valued and the amount of the secured claim determined pursuant to § 506(a); the lien could then be avoided under § 506(d) to the extent "that [the] lien secures a claim against the debtor that is not an allowed secured claim." 11 U.S.C. § 506(d). The procedure for valuation is provided in Rule 3012 and does not require an adversary proceeding. The procedure varies from district to district but must always satisfy the creditors' right to due process. Pursuant to the valuation procedure in this district, the allowed amounts of the secured claims are clearly set forth in the chapter 13 plan confirmation order and the secured creditors receive notice of the proposed treatment of their claims and are given 20 days to object.

**214**

*In re Therneau,* 214 B.R. 782, 785 (Bankr. E.D.N.C.1997) (other citations omitted); *see also Lee Servicing Co. v. Wolf (In re Wolf),* 162 B.R. 98, 107–08 (Bankr.D.N.J. 1993) ("[A] debtor may modify a secured creditor's claim and cancel its lien to the extent permitted under Code section 506(a) and 1325 by so providing in a chapter 13 plan without an adversary proceeding, objection to claim or motion under Bankruptcy Rule 3012.").

■ "The debtor clearly has the opportunity to modify secured claims. This ability is specifically recognized by § 1322(b)(2). Yet modification has its limits. Even where confirmed without objection, a plan will not eliminate a lien simply by failing or refusing to acknowledge it or by calling the creditor unsecured." *Beard,* 112 B.R. at 954. In the present case, however, there has been no action, either directly or indirectly, to avoid Beneficial's lien. The Debtor has not filed an adversary proceeding seeking to avoid the lien, nor did the Confirmed Plan contain any specific plan provision purporting to avoid Beneficial's lien or to cram down the lien under 11 U.S.C.A. § 1325(a)(5)(B). Along those lines, there has been no action by any party to determine the validity or extent of Beneficial's lien. Instead, the only actions concerning Beneficial have related to its claim, not its lien. The Debtor did not provide for the secured treatment of Beneficial's claim in her plan, leading the Trustee to file the Objection to Claim, simply to disallow Beneficial's claim as a secured claim and allowing it to be paid as unsecured in accordance with the Confirmed Plan. No party has taken any action, however, to avoid or invalidate Beneficial's lien encumbering the Real Property, which will survive bankruptcy even though the underlying mortgage debt obligation does not.

■ The court agrees that "[s]ince a lien may be reduced or eliminated by confirmation of a Chapter 13 plan on the basis of value of the collateral but not on the basis of a challenge to its validity, priority or extent, a creditor is bound by valuation of its collateral in a plan but is ordinarily not bound by an attempted elimination of its lien for some reason other than lack of collateral value, unless actually litigated." *In re Zimmerman,* 276 B.R. 598, 602 (Bankr.C.D.Ill.2001). Beneficial has an allowed unsecured claim, so § 506(d) does not apply. Furthermore, subsections (a) and (d) of § 506 are not in conflict with § 1327 and the binding effect that a confirmed plan has on creditors. Beneficial is bound by the Confirmed Plan, and it is entitled to payment thereunder as an unsecured creditor pursuant to its claim and the subsequent treatment thereof. Nevertheless, Beneficial's lien has not been satisfied, and it remains attached to the Real Property, regardless of whether the Debtor or some third party owns the Real Property.

**IV**

■ The next matter to be addressed is whether Beneficial is entitled to relief from the automatic stay for lack of adequate protection. Requests for relief from the automatic stay are governed by 11 U.S.C.A. § 362(d), which provides, in material part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

11 U.S.C.A. § 362(d) (West 1993 & Supp. 2004).

From the time of the filing of the Chapter 13 petition, the "automatic stay" provisions of § 362 restrict the actions of creditors against the property of the estate or of the debtor, "prohibiting most acts and the commencement or continuation of most civil actions to collect a consumer debt." ... Besides being a fundamental debtor protection, the stay provisions prevent some creditors from obtaining payment in preference to and to the detriment of other creditors. *In re Whigham,* 195 B.R. 667, 670 (E.D.Mich.1996) (quoting *Foster v. Heitkamp (In re Foster),* 670 F.2d 478, 483 (5th Cir.1982)).

■■■■ Beneficial argues that cause exists to grant it relief from the stay because the Real Property has been sold to third parties that owe no duty to Beneficial to ensure that the Real Property does not decrease in value. Additionally, Beneficial argues that it does not know if the Real Property is insured, which is also an adequate protection issue. A creditor seeking relief from the automatic stay under § 362(d)(1) "bears the burden of producing evidence establishing a legally sufficient basis for such relief[.]" *In re Planned Sys., Inc.,* 78 B.R. 852, 860 (Bankr. S.D.Ohio 1987). In order to obtain relief for lack of adequate protection, Beneficial must establish a *prima facie* case that the Debtor owes a debt to it, that it possesses a valid security interest securing the debt, and that the collateral securing the debt is declining in value while the Debtor has failed to provide Beneficial with adequate protection of its interest in the Real Property. *In re Harrington,* 282 B.R. 637, 638 (Bankr.S.D.Ohio 2002); *Planned Systems,* 78 B.R. at 860.[6]

■■■ In this case, Beneficial cannot establish a *prima facie* case that it is entitled to relief from the automatic stay based upon adequate protection issues. It is undisputed that the Debtor owes a debt to Beneficial in the amount of $34,980.49, for which it will be paid a pro rata dividend in accordance with the Confirmed Plan. Additionally, the court has already determined that Beneficial retains a valid lien on the Real Property, which is no longer in the hands of the Debtor. There is still a question, however, as to the value of the lien held by Beneficial, and " '[c]ause' under § 362(d)(1) is not limited to those situations where the property of a party lacks adequate protection in the bankruptcy estate." *Soliman v. Spencer (In re Spencer),* 115 B.R. 471, 476 (D.Del.1990) (citations omitted). Instead, "the term 'cause' is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations." *In re Indian River Estates, Inc.,* 293 B.R. 429, 433 (Bankr. N.D.Ohio 2003).

While the Debtor's Chapter 13 bankruptcy case is pending, the value of Beneficial's lien cannot be determined. Beneficial will be receiving a pro rata portion of the $57,217.58 to be disbursed by the Trustee following this decision by the court. Also, Beneficial will receive payments from the Trustee on the remainder of its claim over the life of the Confirmed Plan, leaving a balance somewhat less than the amount of its First Proof of Claim. If the Debtor completes her Confirmed Plan and is granted a discharge under 11 U.S.C.A. § 1328 (West 1993 & Supp.2004), the debt owed to Beneficial will be discharged, and any remaining balance of the $34,980.49

---

6. Adequate protection, which is addressed by the Bankruptcy Code at 11 U.S.C.A. § 361 (West 1993), safeguards a secured creditor's interest in its depreciating collateral during the pendency of the automatic stay. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988).

less all payments received will be the final value of Beneficial's lien against the Real Property.[7] At that time, Beneficial can attribute a value of its lien against the Real Property, and if it so chooses, can proceed against the Real Property pursuant to 11 U.S.C.A. § 362(c)(1) (West 1993) ("... [T]he stay of an act against property of the estate ... continues until such property is no longer property of the estate[.]").[8]

Cause does not exist under § 362(d)(1) to grant Beneficial's Motion for Relief. There is no evidence that Beneficial is facing any adequate protection issues regarding the Real Property.[9] Additionally, Beneficial will receive a pro rata disbursement once the Trustee disburses the funds that she is currently holding as a result of the Debtor's sale of the Real Property. Further, over the course of the Debtor's Confirmed Plan, Beneficial will receive payments towards the debt, which must be credited against the value of the lien encumbering the Real Property. Finally, until the Debtor's Chapter 13 case is completed, closed, dismissed, or converted, neither the court, the Trustee, nor Beneficial can accurately assign a value to Beneficial's lien. Although the purchasers of the Debtor's Real Property are not "codebtors" of the Debtor, they are entitled to a "co-debtor stay" of sorts. Along those lines, until the Debtor receives a discharge, or her case is dismissed, closed, or

converted to Chapter 7 or Chapter 11, Beneficial may not take any action to enforce its lien against the Real Property.

## V

Although the court is reserving its ruling on the Debtor's Modified Plan until after she has had an opportunity for notice upon all creditors and a hearing, the court must consider the proposed modification in its determination of the issues presently before it. The Debtor's Modified Plan proposes to change her payments from $417.50 bi-weekly for 60 months to $300.00 per month for 40 months. Additionally, the Modified Plan seeks to pay Beneficial's First Proof of Claim in its entirety from the funds currently being held by the Trustee, in essence, changing its unsecured treatment in the Confirmed Plan to that of a secured creditor.

Modification of a confirmed Chapter 13 plan is governed by 11 U.S.C.A. § 1329, which provides, in material part, that

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
> > (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

---

**7.** In the event, however, that the Debtor's Chapter 13 case is dismissed before she completes her Confirmed Plan and obtains a discharge, Beneficial may proceed against the Debtor, individually, and/or the Real Property for the full amount of the outstanding balance, notwithstanding the amount pled in the First Proof of Claim, less any payments received from the Chapter 13 Trustee. *See* 11 U.S.C.A. § 362(c)(2) (West 1993).

**8.** Of course, there is nothing to prevent the Debtor from modifying her Chapter 13 Plan

to pay her unsecured creditors, including Beneficial, 100% of their claims, which would leave Beneficial's lien with a $0.00 value upon completion of the Confirmed Plan.

**9.** The opposite is true. The Report filed by the Debtor's attorney evidences that the Debtor sold the Real Property for $75,500.00. After paying expenses of sale and a first mortgage, the Debtor realized $57,217.58. Clearly, the value of the Real Property far exceeds the amount of Beneficial's lien.

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

11 U.S.C.A. § 1329 (West 1993). Any party seeking to modify must do so in accordance with Federal Rule of Bankruptcy Procedure 3015.

While some courts have held that a substantial change in circumstances must be evident for a modification under § 1329, *see, e.g., In re Solis*, 172 B.R. 530, 532 (Bankr.S.D.N.Y.1994), courts within the Sixth Circuit have rejected that view as being contrary to the plain language of the statute. *See Ledford v. Brown (In re Brown)*, 219 B.R. 191, 194–95 (6th Cir. BAP 1998); *In re Breeden*, 304 B.R. 318, 323 (Bankr.N.D.Ohio 2003). Nevertheless, § 1329 clearly requires that certain requirements be met, and in essence, requires a "new" confirmation hearing. *Brown*, 219 B.R. at 194. All modifications must, among other things, be proposed in good faith, not unfairly discriminate, and meet the "best interests of creditors" test. *See* 11 U.S.C.A. § 1325.

■ The Sixth Circuit has analyzed modification under § 1329, finding that subsection (a) does not allow a debtor to "alter, reduce or reclassify a previously allowed secured claim" but instead "only affords the debtor a right to request alteration of the amount or timing of specific payments." *Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 528, 532 (6th Cir.2000). The court went on to say that

debtors "cannot use section 1329(b)(1) to enlarge the modifications permitted by section 1329(a), since section 1329(b)(1) does not apply unless the proposed modification first complies with section 1329(a)(1)." *Nolan*, 232 F.3d at 532. Additionally, the court stated that "[§ ]1329(a)(1) should not be read so broadly as to authorize the reclassification of claims." *Nolan*, 232 F.3d at 533.

The *Nolan* court cited, with approval, *In re Taylor*, 99 B.R. 902 (Bankr.C.D.Ill. 1989), in which the court denied a motion to modify in order to reclassify creditors that were initially included as unsecured creditors as secured creditors to be paid 100%, in either event. The *Taylor* court held that

Section 1329 permits modification as to classes of creditors, not as to individual creditors. The Debtors' pending Modified Plan does not deal with a class of creditors, but rather with two individual creditors who were not separately classified under the terms of the confirmed plan, and thus, are members of the unsecured class of creditors. In short, what the Debtors are attempting to do is to reclassify the claims of BENEFICIAL and CREDITHRIFT as unsecured, cosigned debts to be paid 100%, along with the secured creditors. The Debtors' proposed modification is not within the literal wording of the Code. As one commentator has noted, "Section 1329 does not authorize the debtor to designate classes of claims different from the classifications defined by the confirmed plan." 5 COLLIER ON BANKRUPTCY, par. 1329.01[2][a]. Some courts have given a restrictive interpretation to Section 1329, holding that reclassification of a claim is not permitted after confirmation of a plan.

. . . .

The language of Section 1329(a)(1) is plain. A confirmed plan may be modified to "increase or reduce the amount of payments on claims of a particular class provided for by the plan." 11 U.S.C. Section 1329(a)(1). In this Court's view, it is only when a proposed modification complies with Section 1329(a)(1), that reference must be made to Section 1329(b)(1), in order to determine if the plan as modified conforms to the requirements of Sections 1322(a) and (b), which define mandatory and permissive plan contents, as well as the requirements for confirmation contained in Section 1325(a). A debtor cannot bootstrap Section 1329(b)(1) to enlarge the modifications permitted by Section 1329(a).

*Taylor*, 99 B.R. at 903–05 (footnotes omitted).

Here, the Debtor's Confirmed Plan does not provide for secured treatment of Beneficial's claim. As a result of the Debtor's initial treatment in her Confirmed Plan, Beneficial's claim has been disallowed as a secured claim but allowed as an unsecured claim. The Debtor cannot now seek to modify her plan to provide for secured treatment of Beneficial's claim. This does not, however, mean that the Debtor may not have properly proposed to modify her payments, and the court shall, if necessary, rule on that portion of the Modified Plan in due course, after the time for objections to be filed has expired.

## VI

In summary, the Trustee may disburse the $57,217.58 in her possession in accordance with the Debtor's Confirmed Plan. Beneficial retains a lien on the Real Property not to exceed the value of $34,980.49, which is the amount of its allowed unsecured claim. Beneficial will received pro rata distributions in accordance with the Debtor's Confirmed Plan, which must be credited against the $34,980.49. Once the Debtor's Chapter 13 Plan has been completed and the Debtor has received her discharge, Beneficial may ascertain the value, if any, of its lien and proceed accordingly. In the event that Debtor's case is dismissed, Beneficial will no longer be bound by the amount of its claim, and it may proceed to enforce its lien against the Real Property.

An order consistent with this Memorandum will be entered.

## *ORDER*

For the reasons set forth in the Memorandum on Motion for Disbursement of Funds and Motion for Relief From Stay filed this date, the court directs the following:

1. The Motion for Disbursement of Funds filed by the Chapter 13 Trustee, Gwendolyn M. Kerney, on January 30, 2004, is GRANTED.

2. The Chapter 13 Trustee is authorized to disburse the $57,217.58 in net proceeds received from the Debtor's unauthorized sale of her residence at 9405 Dutchtown Road, Knoxville, Tennessee, in accordance with the provisions of the Debtor's Chapter 13 Plan confirmed on September 5, 2002.

3. The Motion for Relief From Stay filed by Beneficial Finance on February 17, 2004, is DENIED.

SO ORDERED.